EMILY MOTLEY, APPELLANT, V. GEORGE MOTLEY ET AL., APPELLEES.

| 53 | 375 |
| 54 | 719 |
| 58 | 375 |
| 60 | 598 |

FILED JANUARY 3, 1898.  No. 7736.

1. **Dower:** RIGHTS OF WIDOW. The statutes of the state expressly provide how a widow may be lawfully barred of dower in the lands of which her husband died seized, and this bar is made to depend upon her voluntary act.

2. ——: EFFECT OF HUSBAND'S DEBTS: DESCENT. The lands of an intestate descend to his heirs subject to his unsecured debts; but his widow's dower estate in such lands is not incumbered with such debts.

3. ——: RIGHTS OF WIDOW. The lands of a husband during his.life are subject to his wife's inchoate right of dower therein; and, at the instant of his death intestate, the law transmutes the inchoate dower lien into an absolute dower estate, subtracts it from the lands of the intestate and vests the right thereto in his widow.

4. **Administrator's Sale:** DOWER. The sale of the lands of his intestate by an administrator, made in pursuance of a license therefor to pay debts allowed against his estate, does not, of itself, divest the widow's dower estate in such lands.

5. ——: ——. A sale of lands by an administrator to pay the debts of his intestate is a judicial sale, and the doctrine of *caveat emptor* applies to a purchaser thereat.

6. ——: ——: NOTICE TO PURCHASER. Where the record of a proceeding, which resulted in a district court's licensing an admin-

istrator to sell the lands of his intestate, discloses that such intestate left a widow, this is, of itself, notice to a purchaser at such sale of such widow's dower estate in such lands.

7. ——: PARTIES TO PROCEEDING: DOWER: ESTOPPEL. A widow made party to a proceeding by her husband's administrator to sell the lands of which he died seized to pay debts allowed against his estate does not estop herself from claiming her dower estate in the lands sold solely because she neglected to appear in such proceeding.

8. ——: ——: ——: ——. Nor does she estop herself from claiming her dower estate in such lands because she attended the administrator's sale, made no objections thereto, and neglected to advise the bidders thereat that she had a dower estate in such lands.

9. ——: ——: ——: ——. Nor is such widow estopped from claiming her dower estate in the lands so sold because she received a part of the proceeds of such sale as her "distributive share of such estate;" such payment not having been made to nor received by her in lieu of her dower estate.

APPEAL from the district court of Adams county. Heard below before BEALL, J. *Reversed.*

See opinion for references to authorities.

*Batty, Dungan & Burton,* for appellant.

*Capps & Stevens, contra.*

RAGAN, C.

John Motley died intestate in Adams county seized in fee-simple of certain real estate situate therein, leaving a widow and four children. In pursuance of a license granted therefor by the district court of said county Motley's administrator sold such real estate for the purpose of paying the unsecured debts of the intestate which had been proved and allowed against his estate in the county court of said county. Subsequently Emily Motley, the widow, brought this proceeding, under the statute, in the county court of said county to have her dower assigned in the lands of which her husband died possessed. The county court rendered a judgment assign-

ing Mrs. Motley her dower, from which George Motley, the purchaser of the real estate at the administrator's sale, appealed to the district court. The action was there tried to the court without the intervention of a jury and resulted in a judgment dismissing Mrs. Motley's action. This judgment of the district court is now before us for review.

1. In support of the judgment of the district court it is insisted that the sale of the lands to pay debts made by the administrator of itself divested the widow's dower. Section 1, chapter 23, Compiled Statutes, provides: "The widow of every deceased person shall be entitled to dower or the use during her natural life of one-third of all the lands whereof her husband was seized of all [an] estate of inheritance at any time during the marriage unless she is lawfully barred thereof." Other sections of this statute prescribe what causes shall operate to bar the widow of dower in the lands of which her husband was seized during the coverture. Section 2 of the chapter provides that if the husband exchange lands of which he is seized for other lands, his widow shall not have dower in both tracts, but may elect to take her dower out of either tract, provided she begins proceedings to have her dower assigned in one tract or the other within one year after her husband's death; and if such a proceeding is not brought within such time, she shall then have dower only in the land received by her husband in the exchange. Section 3 bars the widow of dower in lands mortgaged by her husband prior to the marriage as against the mortgagee and those claiming under him. Section 4 bars the widow of dower in lands purchased by the husband during coverture and mortgaged to secure the purchase money, as against such mortgagee and those claiming under him, even though she may not have united in such mortgage. Section 12 provides that a married woman residing in this state may bar her right of dower in the land of her husband by joining in a conveyance thereof and acknowledging the same. Section

13 provides that a woman may be barred of her dower in the lands of her husband by a jointure settled on her with her consent before the marriage, provided such jointure consists of a freehold estate in lands for the life of the wife at least to take effect in possession or profit immediately on the death of the husband. Section 15 provides that if any pecuniary provision shall be made for the benefit of an intended wife, and in lieu of dower, and assented to by her in the manner provided by statute, this shall bar her right of dower in the lands of her husband. Section 17 provides that if lands be devised to a wife, or other provision be made to her in the will of her husband, then she may elect to either take under the will or to claim her dower, but she cannot have both; and by accepting the benefits of the provisions of the will she forfeits her right of dower.

These statutes expressly provide how a widow may be lawfully barred of her dower; and it is to be observed that no one of these provisions deprives a widow against her consent of dower in the lands of which her husband died seized; but her loss of dower is made to depend upon her voluntary act. The statute does not prescribe, either expressly or by implication, that the sale by an administrator of his intestate's lands for the payment of his debts shall have the effect of divesting the widow's dower in such lands; and while the lands of an intestate descend to his heirs subject to his debts (Compiled Statutes, ch. 23, sec. 30), and the title which the heirs take to such lands may be divested by a sale thereof for the payment of the debts of the intestate allowed against his estate by the county court, the dower of the widow in such lands does not come to her charged or incumbered with such debts or claims. On the death of her husband her inchoate right of dower, which up to that time was a mere lien charge or incumbrance upon the real estate of the husband, ceased to be such lien or charge, and became an estate, carved out of the lands of the intestate and exempted during her life from the payment of the

ordinary unsecured debts of the intestate. This dower estate the moment it existed became the widow's property; it was not liable for and could not be sold without her consent for the payment of her husband's debts. The language of our statute is not that a widow shall be entitled to dower in the lands of which her husband died seized, but that she shall have dower in all the lands of which her husband was seized as an estate of inheritance at any time during the coverture. This is the law of most of the states of the Union, and in construing this statute the courts are all agreed that, when the lawful marriage of a man and woman and the ownership of real estate by the former concur, an inchoate dower right at once attaches; that this is in the nature of a charge or incumbrance upon the real estate; and, when such right has once attached, it remains and continues a charge upon the real estate, unless released by the voluntary act of the wife or be extinguished by operation of law; and upon the death of the husband the inchoate right is merged into a dower estate. And the authorities are agreed that a judicial sale made of the husband's real state during his lifetime for some obligation of his not secured by a lien upon the real estate in which the wife had joined does not extinguish the wife's inchoate dower, and upon the death of her husband the widow is entitled to her dower estate in the lands so sold. (*Sisk v. Smith*, 1 Gil. [Ill.] 503; *Grady v. McCorkle*, 57 Mo. 172; *Blevins v. Smith*, 16 S. W. Rep. [Mo.] 213; *Vinson v. Gentry*, 21 S. W. Rep. [Ky.] 578; *Porter v. Lazear*, 109 U. S. 84; *Butler v. Fitzgerald*, 43 Neb. 192.) Had the lands involved in this action been sold on execution during the life of the intestate to satisfy the debts for which his administrator sold, such a sale would not have divested the wife's inchoate dower rights nor barred the widow's dower in the lands. How then can it be said that the sale of these lands by the intestate's administrator to pay the latter's debts, of itself, took away the widow's dower in such lands? It is true that the administrator was licensed by

the district court to sell the land of the intestate to pay
his debts, but the district court by this license or order
did not attempt to authorize the administrator to sell
the dower estate of the widow in said lands. We need
not inquire whether the district court had such au-
thority; it is sufficient that nowhere in any paper in the
proceedings of the administrator's sale is the dower es-
tate of the widow referred to.

As we have already seen, the dower estate of the
widow was not liable for the debts of the husband which
had been allowed against his estate by the county court;
and no statute of the state authorizes the district courts,
when granting a license to sell the real estate of the in-
testate to pay his debts, to include therein the widow's
dower. Indeed, it is clear from a reading of the statute
on the subject of the sale of lands for the payment of the
debts of an intestate (Compiled Statutes, ch. 23) that
these statutes contemplate only the sale of the intestate's
interest in the lands of which he died seized. But his
interest in those lands, even during his lifetime, was sub-
ject to his wife's inchoate right of dower, and, at the in-
stant of his death, the law transmuted the inchoate
dower lien into an absolute dower estate, subtracted it
from the lands of the intestate, and vested the right
thereto in his widow. By section 82 of said chapter it is
provided that such a license may be so framed as to au-
thorize the sale of the reversion of the dower of the
widow, and if not so framed, that such reversion may be
sold after the expiration of the widow's life estate. In
the case at bar the administrator described the lands of
which the intestate died seized, procured a license for
their sale to pay his debts, and sold them without any
more specific description. Nowhere in the proceedings
was it stated, in so many words, that he was selling
merely the interests of the intestate in those lands; that
he was or was not attempting to sell the dower estate
of the widow in those lands, nor that he was or was not
selling or attempting to sell the reversion of the dower of

the widow.   We are not called upon at this time to say whether the purchaser at this administrator's sale acquired the fee-simple title to all these lands subject to the dower estate of the widow therein, or whether such purchaser acquired the fee-simple title to only two-thirds of such lands; but we are quite clear that the administrator was not authorized by the district court to sell the dower estate of the widow in the lands of his intestate and that the widow's dower in these lands was not affected by that sale.   We have not been cited to any case, nor have we been able to find one, which holds that a sale made by an administrator of his intestate's lands to pay ordinary unsecured debts proved against his estate bars the widow of the intestate from dower.   So far as we have examined the cases the uniform holding is the other way.   (See, among others, *Kent v. Taggart,* 68 Ind. 163; *Elliott v. Frakes,* 71 Ind. 412; *Armstrong v. Cavitt,* 78 Ind. 476; *Compton v. Pruitt,* 88 Ind. 171; *House v. Fowle,* 29 Pac. Rep. [Ore.] 890; *Whiteaker v. Belt,* 36 Pac. Rep. [Ore.] 534; *Toledo, P. & W. R. Co. v. Curtenius,* 65 Ill. 120.)

2.  A second argument of the purchaser at the administrator's sale in support of the judgment of the district court is that he is an innocent purchaser of this real estate without notice of the rights of the widow to a dower estate in these lands; that when he purchased them at the administrator's sale he believed he was acquiring a perfect title to all the lands described in the license granted by the district court to the administrator. , But the administrator's sale was a judicial sale.   It was made and approved by authority of the district court of the county where the lands were situate, and the doctrine of *caveat emptor* applies to a purchaser of lands at a judicial sale.   The purchaser was bound to take notice of the authority of the administrator, and this authority was to sell only the interest which the intestate had at his death in the lands sold.   He was purchasing real estate, and it was his duty to examine the title and he had no right to rely upon statements of the adminis-

trator, if any were made, as to the character of the title which he was selling. But the record of the proceedings under which the administrator sold disclosed upon its face that John Motley had died intestate, seized of certain lands in Adams county; that he left a widow and certain children and that the administrator was making the sale of these lands to pay debts allowed by the county court of Adams county against the intestate's estate. The purchaser at this administrator's sale was charged with notice of all that this record discloses, and it was of itself notice that this widow had a dower estate in the lands which were being sold. (See *Norton v. Nebraska Loan & Trust Co.*, 35 Neb. 466; *Butler v. Fitzgerald*, 43 Neb. 192; *Whitcaker v. Belt*, 36 Pac. Rep. [Ore.] 534.)

3. The widow of the intestate was made a party to the proceedings of the administrator for the sale of these lands. Notice, as required by the statute, was served upon her to appear and show cause, if any she had, why such license should not be granted, but she made no appearance whatever to that proceeding. Another argument of the purchaser at this administrator's sale, in support of the judgment of the district court, is that the widow cannot now maintain this action to have her dower assigned, inasmuch as she neglected to appear in the district court in the proceeding by the administrator to sell the lands of her husband and set up her dower estate in that proceeding. We do not think any adjudicated case can be found which will sustain this contention. The writer at least, after a patient and protracted search, has been unable to find any such case. Whether the district court is invested with jurisdiction to assign dower in any case we do not determine, but certainly that was not the object of the proceedings by the administrator in seeking a license to sell the real estate of his intestate. The application of the administrator in that proceeding alleged the death of his intestate, described certain lands of which he died seized, that certain claims had been proved against his estate in the county court,

and that the personal estate of the intestate was insufficient to pay these allowed claims and the expenses of administration, and prayed the district court for a license to sell the intestate's real estate to pay those claims.   If the widow had appeared in that proceeding it would have been no defense to the application for her to allege that she had a dower estate in those lands. Such an answer would have stated no defense to the application of the administrator.   The only defense that could have been made to the application would have been one which traversed some of its allegations; and, if we consider that the widow by not appearing confessed the allegations of the administrator's petition, it was not a confession that she had no dower estate in this real estate, but a confession that she had no cause to urge why the license should not be granted as prayed.   And when the district court found that the allegations of the application of the administrator were true and adjudged that the license should be granted as prayed, he neither found nor adjudged that the widow of the intestate had no dower estate in the lands licensed to be sold.   On the other hand, the application of the administrator and the evidence introduced by him in support of it informed the district court that the intestate had left a widow, and that was of itself notice to the court granting the license to sell that the widow had a dower estate in the e lands; and it would be doing an injustice to the intelligence of the court to indulge the presumption that by granting the license to sell he adjudged that the widow had no dower estate therein or that he intended to include in such license the widow's dower estate.

The question as to whether a widow is barred from prosecuting an action for the assignment of dower in lands which had been sold under a judicial proceeding to which she was a party, but made no appearance, was presented to the supreme court of Illinois in *Shaeffer v. Weed*, 3 Gil. 511, in 1846, Abraham Lincoln appearing for the widow.   Shaeffer had furnished material and labor

towards the erection of an improvement on the husband's real estate during the latter's lifetime. After the husband's death he brought suit to have established and foreclosed a mechanic's lien upon the real estate for the labor and material furnished the husband. To this proceeding the widow was made a party, but she did not appear in the action; and it was insisted that the judgment rendered in that proceeding upon her default estopped or barred her right of dower in the lands involved in that proceeding. The contention, however, was overruled.

A statute of the state of Illinois provided that one who had mortgaged his real estate should be deemed to have waived or released his homestead right in the real estate therein if there was inserted in the mortgage the following: "Hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state." A man and his wife executed a mortgage upon their homestead, but the mortgage did not contain the release of the homestead right as provided by statute. Suit was brought to foreclose this mortgage. The husband and wife were made parties and duly served with process, but made default. A decree of foreclosure was entered, the real estate sold, and the sale confirmed. In *Hoskins v. Litchfield*, 31 Ill. 137, the supreme court of Illinois held that the husband and wife were not barred from asserting their homestead rights in the mortgaged premises because of their failure to appear and set up that right in the foreclosure proceeding, and that the decree pronounced in that action did not have the effect to take away the homestead right of the husband and wife. The court said: "This mortgage as to homestead right is like a mortgage in which the wife has not released her right of dower, when sought to be enforced in defiance of that right. Suppose in such a case the wife were made a party to a bill to foreclose a mortgage, without any averment that any right of dower existed or that the wife had released her dower, and a decree passed

against the husband and wife, foreclosing the mortgage
and ordering a sale of the premises. No one would con-
tend that the right of dower would be affected by such
decree, or that a sale under it could convey the premises
freed from the right of dower, for the simple reason that
the law has provided a different and an only mode for
the release of dower." To the same effect see *Moore v.
Titman*, 33 Ill. 357, where it was held that the right se-
cured by the homestead act can only be lost by release
or abandonment in the mode pointed out by statute. A
mere failure to claim the right by answer or cross-bill in
a suit to foreclose a mortgage wherein the right is not
released, will not have the effect to bar the right or be
considered as a relinquishment of the benefits of the
statute. A decree by default and a sale thereunder will
not operate to bar the right. To the same effect see
*Mooers v. Dixon*, 35 Ill. 208; *Wing v. Cropper*, 35 Ill. 256.

In *Grady v. McCorkle*, 57 Mo. 172, the owner of real es-
tate entered into a contract to convey the same and died.
After his death the contractee brought suit against his
widow and heirs for the specific performance of this con-
tract. The widow was duly served with process in that
suit, but made no appearance therein, and a decree of
specific performance was entered as prayed by the con-
tractee. Subsequently the widow instituted a proceed-
ing to have her dower assigned in this real estate and
the contractee interposed the decree entered in the spe-
cific performance suit as a bar to the widow's claim for
dower; but the court held: "In a suit for specific per-
formance of a contract to convey land, brought against
the widow and heirs of the owner, where the dower
of the widow is not in any manner determined or liti-
gated, or drawn in question by the proceedings, a decree
for plaintiff will not estop the widow from afterward
recovering her dower." The statute of Missouri, like
ours, provided that the widow should be endowed with
a third part of all the lands whereof her husband was
seized of an estate of inheritance at any time during the

29

marriage. Construing this statute the court said: "The right of dower attaches whenever there is a seizin by the husband during the marriage, and, unless it is relinquished by the wife in the manner prescribed by law, it becomes absolute at the husband's death. After the right of dower has once attached, it is not in the power of the husband alone to defeat it by any act in the nature of an alienation or charge. It is a right in law, fixed from the moment the facts of marriage and seizin concur, and becomes a title paramount to that of any person claiming under the husband by subsequent act." Discussing the effect of the decree in the specific performance suit the court said: "The whole object, extent, and scope of that proceeding was to have the agreement and undertaking of William Grady specifically performed. The rights against the widow and heirs were precisely the same as they would have been against William Grady, had he been alive and made a party to the suit. But a suit against him would not have affected his wife's right to dower without any concurring act on her part. * * * The question of the plaintiff's right of dower was neither raised nor decided and was not made a subject of adjudication in the suit for specific performance. The plaintiff did not answer, and although she was perhaps properly made a party, my conclusion is that she is not barred from claiming her dower interest in the land—she having done nothing to relinquish the same."

A case exactly in point here is *Compton v. Pruitt*, 88 Ind. 171. In that case an administrator was licensed to sell the lands of his intestate to pay debts proved against his estate. His widow was made a party to this proceeding, but did not appear therein. The widow then brought suit to have her dower assigned and the proceedings of the administrator by which the lands of the intestate were sold and conveyed were pleaded in bar of the widow's action; but the court overruled the plea and summed up its conclusion in the syllabus as follows: "An administrator cannot, without a widow's consent,

sell her interest in lands of which her husband died seized, to make assets to pay debts. If a widow be made defendant to a proper petition to sell such lands, her default gives no power to sell her interest, and a purchaser does not acquire even color of title against her, and any attempt to sell her interest is a nullity." The court said: "In this case the petition [that is, of the administrator for leave to sell to pay debts] stated that the decedent died seized of the land, etc., leaving a widow. That was equivalent to a statement that only two-thirds of it was liable to be made assets. It notified the court and all parties in interest to that effect as fully as if the language * * * stated expressly that the land to be sold was two-thirds of the land described. So the notice of the application to sell stated that the administrators had filed their petition to sell the real estate of the decedent, nothing more. Such a petition and notice did not inform the widow of an intended attack upon her rights and she was guilty of no laches in failing to appear in the proceeding. She had a right to presume that the land liable to be made assets was the only subject of the petition and against such a petition she had no defense." To the same effect see *Elliott v. Frakes*, 71 Ind. 412.

In *Merchants Bank v. Thomson*, 55 N. Y. 7, it was held: "Where the wife of a mortgagor has not joined in the mortgage and has an inchoate right of dower in the mortgaged premises, the making of her a party to an action of foreclosure without allegations in the complaint that the mortgage is prior, superior, or hostile to her interest does not affect that interest, nor does the general clause in the judgment foreclosing defendants of all right in the premises."

In *Parmenter v. Binkley*, 28 O. St. 32, D. and M. instituted proceedings to foreclose a mortgage executed by B. alone, making B.'s wife a party. The wife did not answer or appear in the case. A decree of foreclosure was rendered and the land sold, and the court held that the foreclosure proceeding did not bar B.'s wife of her right of dower in the land sold.

*Hooper v. Castetter*, 45 Neb. 67, was a suit brought to foreclose a mortgage executed by both husband and wife. The mortgagor and his wife were made parties and duly served with process, but made no appearance to the action. Certain judgment creditors of the mortgagor were also made parties. They filed answers setting up their judgments and claiming that they were liens upon the mortgaged real estate subject to the mortgage. The court so found and decreed. The land was sold and after the mortgage was discharged there was a surplus paid into court. The judgment creditors claimed that this surplus should be applied on their judgments. The mortgagor and his wife claimed that they were entitled to the surplus in lieu of their homestead. It was contended in that case that the mortgagor and his wife were estopped from claiming the surplus proceeds of the sale because of their failure to set up their homestead rights in the foreclosure suit; but this contention was by this court overruled, and it was held that the question of the homestead rights of the mortgagor was not involved nor litigated in the foreclosure suit, and that the decree rendered in that suit was not a bar to the mortgagor's application to have the surplus paid to him in lieu of the homestead.

4. A fourth argument of the purchaser is that the widow has estopped herself by her conduct from now claiming her dower estate in the lands in controversy. The averment of the purchaser's answer on this subject is as follows: "That said plaintiff [that is, the widow] was present in person and attended the sale of said real estate and heard the bids made therefor and knew what said real estate sold at and never at any time made any objections thereto." The evidence sustains this averment of the answer. But the widow has not estopped herself from claiming her dower estate, because she attended the administrator's sale and made no objections thereto. The administrator was not selling or attempting to sell her property. She had no objection to the

sale of her husband's interest in the lands of which he died seized, and therefore she kept silent. It was not her duty to speak and advise the bidders at that sale of the laws of the state. The bidders, as well as the widow, were bound to know those laws. The answer of the purchaser does not allege, nor do the proofs show, that he was induced to purchase this real estate because of anything done or omitted to be done by the widow. His sole complaint is that she kept silent. But a complete answer to this is that she did not keep silent under circumstances when it was her duty to speak.

Scribner, discussing the question under consideration and citing the authorities, says: "Where the widow has done nothing to mislead the purchaser, and the circumstances are such that she is not required by good faith to disclose her claim, her mere silence in regard to it does not affect her right. Thus, her failure to give notice of her claim when the land in which she has dower is advertised for sale is no bar to her recovery. So, where lands are sold by a commissioner under an order of court, obtained by the widow as administratrix, but nothing is said or done to induce the belief that she will waive her dower, a simple omission on her part to announce at the sale that the land will be sold subject to her dower will not estop her from asserting that right. * * * In order to constitute an *estoppel in pais* not only must the widow by her words or conduct have caused the purchaser to believe that he would acquire a title discharged from dower, but he must also have acted upon that belief in making his purchase and paying the purchase money." (2 Scribner, Dower [2d ed.], p. 271.)

The same question was presented in *House v. Fowle*, 29 Pac. Rep. [Ore.] 890, and there the court said: "A widow is not estopped to assert her dower in land sold by order of court to satisfy decedent's debts because she assured the purchaser that the title was good and did not intimate her intention to claim the same—her dower. * * The defendant's next contention is that under the par-

ticular facts in this case the plaintiff is estopped from claiming her dower. The facts relied upon to create the estoppel are fully set out in the defendant's answer, but we think they are entirely insufficient. It may be conceded, and no doubt is true, that the defendant acted in the most perfect good faith. There is nothing shown indicating bad faith on either side. The defendant was chargeable with notice of what the statutes contain and of the nature of the title he would acquire at such sale. In addition to this the rule of *caveat emptor* applies to all judicial sales in this state. It was the defendant's privilege and his duty to investigate the title before the sale and for that purpose to employ such assistance as he might deem necessary; but he did not resort to the usual methods to ascertain the state of the title. An unlearned woman, unacquainted with the forms of conveyancing or the methods of business, could not be regarded as a safe guide or source of information from whom the true state of the title could be learned. It will be noticed that the defendant did not ask the plaintiff at either of the conversations he had with her whether she had or claimed any interest in the lands as dower or otherwise. What she told him was that the title was good. That statement was literally true, but it is not equivalent to the statement that she had no dower in the land and that if he would purchase at the sale he would acquire a fee-simple title free from all incumbrances. It does not anywhere appear that the defendant relied upon the statements or representations of the plaintiff and was thereby induced to make the purchase." To the same effect is *Whiteaker v. Belt*, 36 Pac. Rep. [Ore.] 534.

The question under consideration was presented to the supreme court of Illinois in *Toledo, P. & W. R. Co. v. Curtenius*, 65 Ill. 120, and the court said that a widow was not estopped from asserting her claim for dower because she had consented to and advised a guardian's sale of the real estate of which her husband died seized.

The cases cited by the purchaser here do not sustain his contention that the widow in this action by her conduct has estopped herself from claiming her dower estate. In the first case, *Smiley v. Wright*, 2 O. 506, the widow was not only present at the administrator's sale, but she expressly and publicly asserted that the sale of the lands about to be made would include her dower interest. The license to sell in that case provided that the lands should be sold subject to her dower estate, and after the sale had begun she caused it to be suspended in order that the administrator might announce her agreement that the sale should include her dower estate. The sale was then resumed, and in consequence of this agreement upon her part the bids for the real estate were largely increased and the administrator, with the consent of the widow, then and there attempted to sell, and did sell, her dower interest in her presence; and under these circumstances the court held that she could not afterwards claim her dower in the lands as against the purchaser at that sale. The other case cited by the purchaser here is *Pepper v. Zahnsinger*, 94 Ind. 88. In that case the administrator, who had been licensed to sell the real estate of his intestate to pay debts, was requested, in writing, by the widow to sell her dower estate at the same time that he sold the estate of his intestate. He did so, and then paid to the widow in lieu of dower one-third of the entire proceeds of the sale and the court held that the widow was estopped from afterwards claiming her dower estate. But the facts of these two cases are far away from the facts of the case at bar. They were doubtless correctly decided, but they do not support the contention here that the widow has estopped herself from claiming dower solely because she was present at the administrator's sale and kept silent in regard to her dower estate in the lands being sold.

5. The final contention of the purchaser here is that the widow is estopped from claiming her dower estate because she received a part of the proceeds of the land

sold by the administrator in lieu of her dower estate. This is the allegation of the answer, but it is wholly unsustained by the proofs. The only evidence offered to sustain this allegation is that the administrator, on a final settlement and distribution of the assets of the estate, paid to the widow, by order of the county court, $117.01 1-3, and that this sum was receipted for by the widow as her distributive share of her husband's estate. There is not a word in the record which shows that this money was paid to this widow in lieu of her dower estate, or that she accepted it as such. On the contrary, the undisputed evidence is that this payment was made to and received by the widow in full of her distributive share of her husband's estate, not in lieu of her (dower) estate, or in consideration of her release or conveyance of her (dower) estate. On the coming into the county court of the administrator's final report it appeared that, after the payment of all the claims allowed against the estate of the intestate, and the costs and expenses of administration, there remained in his hands a small sum of money. It was out of this residue that the administrator paid, by order of the county court, the $117 to the widow. With the question as to whether this payment was legally made we are not concerned, as we are not reviewing the judgment of the county court. If that tribunal regarded the surplus in the administrator's hands as part of the personal effects of the intestate, though it arose from the sale of his real estate, and considered that the widow was entitled to a child's share of such residue, the county court may have been mistaken, as the intestate's real estate belonged to his heirs, subject to his debts, and after they had been discharged by sale of the real estate, the surplus remaining from the proceeds of such sale may have belonged to the heirs and not to the widow; but that is a matter between the heirs and the widow. The fact that the widow received a part of the residue of the proceeds of the sale of her husband's real estate is no defense to the purchaser here

against the widow's claim for her own estate. Further-more, this payment to the widow was made long after the purchase of the real estate at the administrator's sale, and we are not informed by the record, nor are we able to conjecture, how the purchaser was induced to change his status and buy this land by a payment made to, and accepted by, the widow after the purchase. In order to estop the widow from claiming her dower estate as against the purchaser he must show that he was induced to change his status by something that she did or omitted to do. If the county court, the administrator, and the heirs erroneously supposed, on final settlement of the estate, that the widow was entitled to part of the money remaining in the administrator's hands, and on that supposition that money was paid to her, how can the purchaser claim that he was induced to make the purchase he did by this conduct of the widow, administrator, heirs, and county court after he made his purchase? The precise question under consideration was presented to the supreme court of Indiana in *Compton v. Pruitt*, 88 Ind. 171, and the court held that the receipt by the widow of part of the proceeds of the sale of lands made by the administrator to pay the debts of the intestate, such payment to the widow having been made as her distributive share of her husband's estate, did not estop her from claiming her dower in the lands sold.

We reach the conclusion that in the case at bar the widow has been illegally and unjustly denied her dower estate in the lands of her deceased husband. The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.