PETERBOROUGH SAVINGS BANK, APPELLANT, V. A. W. PIERCE ET AL., APPELLEES.

FILED APRIL 21, 1898. No. 7971.

1. **Estates: MERGER.** It is a general rule that where two unequal estates vest in the same person at the same time, without an intervening estate, the smaller is thereupon merged in the greater.

2. ——: ——. But merger does not always or necessarily result from such a coinciding of such estates.

3. ——: ——. Whether the two estates will be held to have coalesced will depend upon the facts and circumstances in the particular case, the then intention of the party acquiring the two estates, and the equities of the parties to be affected.

Peterborough Savings Bank v. Pierce.

4. ———: ———: MORTGAGES: FAILURE TO REGISTER ASSIGNMENT: ATTACHMENT. The mortgagee of a real estate mortgage securing a negotiable note sold and assigned the same, but the assignment was not recorded. Subsequently the mortgagee obtained a conveyance of the legal title to the real estate on which the mortgage was a lien. Afterwards, and before the maturity of the mortgage debt, a creditor of the mortgagee attached the real estate, purchased it for value at the attachment sale, procured a sheriff's deed therefor, and filed the same for record. The creditor had no knowledge that the mortgage had been assigned, but supposed the mortgagee owned it and that it had merged in the legal title acquired by him. No communication whatever took place between the mortgagee and the creditor concerning the mortgage. *Held,* (1) That the presence of the mortgage unsatisfied upon the record was of itself sufficient to put an intending purchaser of this real estate upon inquiry as to the whereabouts of the note which the mortgage secured, and as to whether such mortgage had been satisfied by merger or otherwise; (2) that the presence of the mortgage unsatisfied upon the record was notice to an intending purchaser of the real estate that the mortgagee intended at the time he acquired the legal title to keep the two estates separate.

5. **Execution Sales:** CAVEAT EMPTOR. The doctrine of *caveat emptor* applies to purchasers of real estate at execution sales.

6. ———: TITLE OF PURCHASER. Except when controlled by the registry acts, a purchaser of real estate at execution sale acquires only the interest which the execution debtor had in such real estate, when the lien attached on which it was sold.

7. ———: SHERIFFS' DEEDS. Generally, a sheriff's or master's deed conveys only the estate which a quitclaim deed from the execution debtor to the purchaser would have conveyed had it been made and delivered at the date when the lien attached under which the judicial sale occurred.

8. **Vendor and Vendee:** MORTGAGES: BONA FIDE PURCHASER. One who purchases the legal title to real estate from a mortgagee thereof, the mortgage securing a negotiable unmatured note being of record, is not a purchaser without notice, within the meaning of the recording acts, and entitled to protection against such mortgage then in the hands of a *bona fide* purchaser thereof, although no assignment of such mortgage is of record.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J. *Reversed.*

*John W. Lytle,* for appellant.

References: *Miller v. Finn,* 1 Neb. 298, 300; *Hunt v. Hunt,* 14 Pick. [Mass.] 382; *Jewett v. Tomlinson,* 36 N. E.

Rep. [Ind.] 1106; *Brounty v. Daniels*, 23 Neb. 164; *Fulton v. Hanlow*, 20 Cal. 450; *Hawks v. Truesdell*, 99 Mass. 557; *Auld v. Smith*, 23 Kan. 66; *Eggert v. Beyer*, 43 Neb. 711; *Mundy v. Whittemore*, 15 Neb. 652; *Webb v. Hoselton*, 4 Neb. 308; *Chency v. Janssen*, 20 Neb. 129; *Bridges v. Bidwell*, 20 Neb. 185; *Mulcahy v. Fenwick*, 36 N. E. Rep. [Mass.] 689; *Biggerstaff v. Martson*, 36 N. E. Rep. [Mass.] 785; *Marsh v. Rice*, 1 N. H. 167; *Burhaus v. Hutcheson*, 25 Kan. 626.

*Smith & Sheean* and *Herdman & Herdman*, contra.

References: *McClain v. Weise*, 22 Ill. App. 272; *Bleckley v. Branyan*, 26 S. Car. 424; *Clark v. Clark*, 76 Wis. 306; *Lynch v. Pfeiffer*, 110 N. Y. 33; *Norris v. Morrison*, 45 N. H. 490; *Gregory v. Savage*, 32 Conn. 250; *Allen v. Anderson*, 44 Ind. 395; *Condit v. Wilson*, 36 N. J. Eq. 370; *Ettenheimer v. Northgraves*, 75 Ia. 28; *Weaver v. Carpenter*, 42 Ia. 343; *Gower v. Doheney*, 33 Ia. 36; *Foorman v. Wallace*, 75 Cal. 552; *Riley v. Martinelli*, 97 Cal. 575; *Luton v. Sharp*, 94 Mich. 202; *Whipple v. Fowler*, 41 Neb. 675; *Porter v. Ourada*, 51 Neb. 510; *Swartz v. Leist*, 13 O. St. 419.

RAGAN, C.

January 15, 1889, A. W. Pierce was the owner of lot 3, in block 1, Brigg's Place Addition to the city of Omaha. On that date Pierce, being indebted to the Kimball-Champ Investment Company, executed and delivered to said company his three notes, one for $1,500 and two for $50 each. These notes were payable to the order of the investment company and due five years after date and bore interest payable semi-annually. January 15, to secure the payment of said notes, Pierce executed and delivered to the investment company two mortgages upon the above described real estate, one securing the $1,500 note, which was made a first lien upon the property, and the other securing the two $50 notes, and

it was a second lien upon the property. These mortgages were duly recorded about the date of their execution. February 6, 1889, the investment company sold, assigned, and delivered the $1,500 note and the mortgage securing the same to the Peterborough Savings Bank, a New Hampshire corporation, but the savings bank never placed of record the assignment of the mortgage made to it by the investment company. Subsequent to this date the investment company assigned the two $50 notes and the mortgage securing the payment of the same to one M. C. Patrick. In September, 1889, the investment company brought a suit in the district court of Douglas county, claiming that it was then and there the owner of the said $1,500 note and the mortgage securing the payment of the same; that Pierce had made default in the payment of an installment of interest due thereon, by reason of which the entire mortgage debt had become due, and prayed the court for a decree foreclosing that mortgage. To this suit Patrick was a party and he filed therein a cross-petition setting out that he was the owner of the two $50 notes above mentioned and the mortgage securing the same and prayed for a foreclosure of his mortgage. In December, 1890, this case came on for hearing, and the district court found that the investment company was then and there the owner of the $1,500 note and mortgage and that there was a large sum due to it on said mortgage from said Pierce. The court also found that Patrick owned the two $50 notes and the mortgage securing the same, what was due on that mortgage debt, and entered a decree foreclosing the Patrick mortgage and ordering the real estate sold for its payment. But the decree foreclosed the Patrick mortgage subject to the $1,500 mortgage and ordered the real estate sold subject to the lien of that mortgage. The real estate was so sold and purchased by Patrick, the sale confirmed, and a master's deed executed to him for the real estate. This deed recited that the conveyance was made to him subject

to the $1,500 mortgage. To this suit the savings bank
was not a party, nor had it any knowledge, until years
afterward, that such a suit had ever been brought, and
at the time the suit was brought, and at all times after
February 6, 1889, it owned the $1,500 mortgage and the
debt which it secured, which the investment company
claimed in that suit it owned and which the court found
it owned. October 8, 1891, Patrick conveyed the real
estate which he had purchased at the mortgage fore-
closure sale and two other lots in the same block to the
investment company, the conveyance reciting "that such
premises are free and clear of all liens and incum-
brances except three mortgages of $1,500 each and in-
terest and taxes now due." After the conveyance by
Patrick to the investment company it became indebted
to one Hendee, and she brought a suit against it and
caused the property embraced in this controversy, to-
wit, said lot 3, in said block 1, to be attached. Hendee
procured a judgment against the investment company
for a considerable sum of money and an order that the
attached property should be sold for the payment of
such judgment. The sale occurred, and one Smith, as the
assignee of the Hendee judgment, purchased the prop-
erty. This sale was confirmed and in due time a sheriff's
deed executed to Smith. This deed was recorded De-
cember 28, 1893. June 14, 1894, Smith conveyed the
property to one Wertman, and on July 5, 1894, Wertman
conveyed it to Bert O. Carver, who still owns it. On
this same date Carver executed to Smith a mortgage
upon the real estate which he then or soon afterward
assigned to Wertman, who now holds the same. June
20, 1894, one Mary Stack recovered a judgment against
the said Hendee and the said Carver, and on October 22
of said year she brought a suit in the district court of
Douglas county to subject the property in controversy
here to the payment of her judgment. Thus matters
stood when on February 9, 1895, the savings bank
brought this suit in the district court of Douglas county

to foreclose the $1,500 mortgage. To this suit Pierce, the original mortgagor, Carver, the owner of the real estate, Wertman, the assignee of the mortgage made by Carver to Smith, Stack, Hendee, and others were parties. Carver claimed to be the owner of the real estate discharged of the lien of the mortgage sought to be foreclosed. Wertman claimed to have a first lien upon the real estate by virtue of the mortgage executed by Smith and by the latter assigned to him.

Since the only title which Carver has to the real estate comes through Smith, the purchaser at the Hendee attachment sale, it is only necessary to inquire into the correctness of this decree as affecting Carver's title. Before Smith purchased at the attachment sale he examined the public real estate records of Douglas county, and they did not disclose any assignment of the $1,500 mortgage from the investment company, but did disclose that the investment company, while the apparent owner of that mortgage, acquired the legal title to the real estate upon which the mortgage was a lien, this conveyance of the legal title not evidencing any intention on the part of the investment company to keep the two estates separate. Smith at this time had notice neither actual nor constructive that the $1,500 mortgage had been assigned by the investment company to the savings bank, and, relying upon the facts disclosed by the record, he was led to believe, and did believe, that at the time the investment company accepted the conveyance of the legal title it was then the owner of the $1,500 mortgage, and that a purchaser of the real estate at the attachment sale would take the title to such real estate discharged from the lien of such mortgage. Influenced by the knowledge and the notice thus furnished him by the records Smith purchased the real estate in controversy at the Hendee attachment sale for a valuable consideration, obtained a deed therefor, and caused it to be recorded.

The decree of the district court, as we understand

it, is based upon the following proposition: That had the investment company actually been the owner of the $1,500 mortgage at the time it received the conveyance of the legal title of the real estate from Patrick, there being no intervening estate, that then, by operation of law, the two estates would have merged and the mortgage been satisfied; and from the condition of the record and Smith's want of notice that the $1,500 mortgage had been assigned. he was justified in supposing that the mortgage had been merged in the legal estate, and is, therefore, a purchaser in good faith without notice, within the meaning of section 16, chapter 73, Compiled Statutes, and entitled to hold the real estates purchased discharged of the savings bank's mortgage. It is a general rule that where two unequal estates vest in the same person at the same time without an intervening estate the smaller is thereupon merged in the greater. (2 Cooley's Blackstone [3d ed.] 277; 2 Washburn, Real Property 564.) But merger does not always or necessarily result when two unequal estates coincide in the same person without an intervening estate. Whether the two estates will be held to have coalesced will depend upon the facts and circumstances in the particular case, the intention of the party acquiring the two estates, and the equities of the parties to be affected thereby. (See the rule stated and the authorities collated in 15 Am. & Eng. Ency. Law 321; *Miller v. Finn*, 1 Neb. 254; *Wygant v. Dahl*, 26 Neb. 562; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207; *Mathews v. Jones*, 47 Neb. 616.) Had the investment company then owned the $1,500 mortgage at the time it acquired the legal title to the real estate upon which it was a lien, it could not be held, as a matter of law, that Smith, by purchasing this real estate under the Hendee attachment suit, would have taken it discharged of that mortgage, even as against the investment company. The conduct of the investment company might have been such in the premises that it would

have been estopped from asserting the mortgage against Smith's title; but simply because it held the mortgage at the time it acquired the legal estate upon which the mortgage was a lien, and that Smith purchased this legal estate at execution sale, would not, without more, have entitled him to hold the real estate discharged of the mortgage. The doctrine of *caveat emptor* has always been applied by this court to purchasers of real estate at execution sales, and, except when controlled by the registry acts, a purchaser of real estate at an execution sale acquires only the interest which the execution debtor had in such real estate when the lien attached under which the sale occurred; that the sheriff's or master's deed has only the effect that a quitclaim deed from the execution debtor to the purchaser would have if made and delivered at the date when the lien attached on which the judicial sale is based. (*Miller v. Finn*, 1 Neb. 254; *Norton v. Nebraska Loan & Trust Co.*, 35 Neb. 466; *Butler v. Fitzgerald*, 43 Neb. 192; *Hargreaves v. Menken*, 45 Neb. 668; *Nye v. Fahrenholz*, 49 Neb. 276; *Motley v. Motley*, 53 Neb. 375.)

We do not think that Mr. Smith was a subsequent purchaser in good faith without notice within the meaning of the section of the statute just quoted. That he purchased the real estate in good faith, that he paid value for it at the time, having no notice or knowledge that the savings bank held this mortgage, stands undisputed in the record. But before he purchased this real estate he examined the real estate records of Douglas county and they disclosed that in January, 1889, Pierce owned this real estate; that at that time he executed and delivered to the investment company the mortgage in controversy; that subsequently Pierce's equity of redemption in this real estate was sold to Patrick subject to the mortgage, and that Patrick subsequently conveyed Pierce's equity of redemption to the investment company. At the time Mr. Smith purchased the real estate the investment company held the title to the land

and the mortgage upon the land as disclosed by the record. But Smith made no inquiry, so far as the record before us shows, of the investment company as to whether it intended, by taking the conveyance of the legal title to the land, that the mortgaged estate should be merged in such legal title; nor did he make any inquiries of the investment company as to the whereabouts of the $1,500 mortgage or the note which it secured; and he was not justified in presuming that the two estates had merged in the investment company. This mortgage secured a negotiable promissory note which was not then due, and the record of this mortgage was of itself a notice and a warning to all persons dealing with this real estate to beware. The presence of the mortgage upon the record unsatisfied was of itself sufficient to put an intending purchaser of this real estate upon inquiry as to the whereabouts of the note which it secured and as to whether it had been satisfied by operation of law or otherwise. The presence of the mortgage upon the record unsatisfied was a notice to an intending purchaser of this real estate that, if the investment company owned the mortgage and the legal title to the land upon which it was a lien, as well by keeping the mortgage upon the record unsatisfied, it intended at the time of acquiring the legal title to keep the two estates separate.

This case is not ruled by *Whipple v. Fowler*, 41 Neb. 675, nor by *Porter v. Ourada*, 51 Neb. 510, but is controlled by *Mathews v. Jones*, 47 Neb. 616, which holds that one who purchases the legal title of real estate from a mortgagee thereof, the mortgage securing a negotiable, unmatured promissory note being of record, is not a purchaser without notice, within the meaning of recording acts, and entitled to protection against such mortgage then in the hands of a *bona fide* purchaser thereof, although such purchaser had neglected to record his assignment. Furthermore, the record discloses that, when the property was appraised for sale in the attachment suit, the mortgage in suit was deducted from the

appraised value of the property. Smith, therefore, purchased subject to the mortgage in suit, as the record in the attachment suit disclosed.

The decree appealed from is reversed and the cause remanded to the district court with instructions to enter a decree in favor of the savings bank foreclosing its mortgage as prayed for in its petition.

REVERSED.

HARRISON, C. J., and NORVAL, J., concurring in the above opinion of RAGAN, C.

IRVINE, C., concurring specially.

While concurring in the conclusion reached by the court, I think the reasons upon which that conclusion is chiefly based in the opinion are unsound, and therefore wish to express my own views separately.

To my mind the fact upon which the case should turn, and the only fact leading justly to a conclusion in favor of the appellant, is that at the attachment sale the plaintiff's mortgage was deducted as a lien prior to the attachment, and that the purchaser at that sale did not obtain the apparent title on which appellee now relies. The sale did not purport to convey the title discharged from the mortgage lien. One who buys at an execution sale of land, where the appraisement shows that a particular lien has been deducted in order to reach the value of the debtor's interest, is thereafter estopped to deny the validity of that lien. (*Koch v. Losch*, 31 Neb. 625; *Nye v. Fahrenholz*, 49 Neb. 276.) Smith, when he purchased at the attachment sale, was charged with notice of the appraisement. (*Norton v. Nebraska Loan & Trust Co.*, 35 Neb. 466, 40 Neb. 394.) He was charged, therefore, with notice that he was obtaining only the equity of redemption, and that the mortgage lien had been deducted in such a manner as to estop him from questioning its validity or existence. This was of record, and his grantees, in searching his title, would obtain the

50

same notice and were also charged therewith. This consideration is sufficient to dispose of the case. Regarding all other matters unnecessary to a decision, I regret that the court has deemed it necessary to consider them, because, in my opinion, outside of the feature just discussed, there is nothing to charge the purchaser with notice.

When Smith searched the records, preparatory to bidding at the attachment sale, he found a mortgage to the investment company, the record of a foreclosure suit, where all parties the record disclosed to be interested were before the court, a decree foreclosing a junior mortgage and establishing the investment company's mortgage as a senior lien, a sale under that decree, duly confirmed, and a deed to the purchaser duly recorded. He found a deed whereby that purchaser conveyed the property to the investment company. He thus found, so far as the records disclosed, a mortgagee buying and receiving a conveyance of the equity of redemption, without any other estate intervening. Was he not then justified in assuming that the two estates had merged? It is conceded that under such circumstances merger occurs unless by intention of the parties, or by intervening equities, such a result is prevented. The presumption is in favor of merger, and there was nothing here to rebut that presumption, so far as the records disclosed. It is said that the fact that the conveyance from Patrick to the investment company was subject to the mortgage was sufficient to rebut the presumption, or at least to notify Smith that there might be no merger. *Mathews v. Jones,* 47 Neb. 616, is cited as applicable to this phase of the case. But the facts are very different. In *Mathews v. Jones* the deed to the mortgagee recited that the conveyance was subject to the mortgage, which the mortgagee "assumed and agreed to pay." Of course the mortgagee would not expressly assume and agree to pay a mortgage which he himself then owned. In this case there was no such covenant. On the contrary the deed was one of

general warranty, except that the grantor, in convey-
ing to the mortgagee, excepted the mortgage from his
covenant of warranty.  A mortgagor, in conveying to
the mortgagee with the intention on the part of both
to thereby extinguish the mortgage, would, for the very
purpose of effecting that object, avoid covenanting
against the existence of a mortgage owned by the
grantee himself.  There is a vast difference between a
covenant by the grantee to pay a mortgage and the re-
fusal of the grantor to covenant against it when it is
held by the grantee himself.  In the latter case the
exception of the mortgage from the covenant, if it has
any significance, strengthens the presumption of a
merger.

It is also said that it was the duty of Smith to inquire
whether there had been in fact a merger.  Finding the
mortgagee had acquired the remainder of the estate,
Smith would know that if no merger had taken place
it would be necessary for the owner to begin a suit
against himself in order to preserve the estate which
he was endeavoring to keep distinct.  In that case he
would have to allege that he as defendant had made a
default against himself as plaintiff, and that by reason
of failing to keep his own obligations to himself he was
entitled to invoke the aid of the court to enforce his
own obligations to himself by selling his own property
to discharge them.  Is it reasonable to say that Smith
was put on inquiry to ascertain whether such an absurd
state of affairs existed?  The writer can recall only one
instance where any person has been said to have actu-
ally pursued so cautious a policy, and that is the case
of the worthy Lord Chancellor, immortalized by Gilbert
& Sullivan, who considered seriously whether he should
fine himself for contempt of his own court in marrying
his own ward without his own consent.

By our statute all deeds, mortgages, and other instru-
ments which are required to be recorded are void as to
subsequent purchasers without notice whose deeds,

mortgages, or other instruments shall be first recorded. (Compiled Statutes, ch. 73, sec. 16.) Here Smith's deed was recorded before the assignment of the mortgage was recorded. By section 1 of the same chapter "deeds of real estate" shall be recorded. Section 46 provides: "The term 'deed,' as used in this chapter, shall be construed to embrace every instrument in writing, by which any real estate or interest therein is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity, except last wills, and leases for one year or for a less time." Certainly assignments of mortgages are within this provision. This court has gone to perhaps an extreme in protecting secret assignments of mortgages, but in no case have we repealed the recording act by giving effect to an unrecorded assignment, as against a purchaser without notice whose muniments of title were actually recorded before the assignment. True, the lien of an attachment extends only to the interest of the defendant in attachment, but the cases where that principle is announced state as a qualification that for its application the deed under the attachment sale must not be recorded before that creating the secret equity. (*Mansfield v. Gregory,* 8 Neb. 432; *Harral v. Gray,* 10 Neb. 186; *Mansfield v. Gregory,* 11 Neb. 297; *Hargreaves v. Menken,* 45 Neb. 668; *Sheasley v. Keens,* 48 Neb. 57.) *Per contra,* a purchaser at such sale, if he buy without notice of the outstanding equity and place his deed on record prior to the record of the instrument creating such equity, is entitled to the protection of the recording act. (*Uhl v. May,* 5 Neb. 157; *Hubbart v. Walker,* 19 Neb. 94.) Tested by these principles Smith acquired a good title, except for the notice imparted by and the legal effect of, the deduction of plaintiff's mortgage in appraising the land for sale under the attachment.

Sullivan, J., and Ryan, C., concur in the foregoing opinion of Irvine, C.