NEBRASKA CENTRAL BUILDING & LOAN ASSOCIATION, APPEL-
LANT, v. H. J. HUGHES & COMPANY: H. A. MARR
GROCERY COMPANY, APPELLEE: WILLIAM H. PITZER,
CROSS-PETITIONER, APPELLANT.

FILED MAY 22, 1931. No. 27761.

*Pitzer & Tyler* and *Lloyd E. Peterson*, for appellants.

*Thomas E. Dunbar, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and
PAINE, JJ., and HORTH, District Judge.

GOOD, J.

Plaintiff, a mortgagee, instituted this action for the fore-
closure of a real estate mortgage for the benefit of cross-
petitioner Pitzer, alleging that the latter was the equitable
owner of the mortgage. Defendant Berger, the mortgagor,
made default. H. J. Hughes & Company, defendant, filed
answer and cross-petition, setting up a lien by virtue of
a judgment obtained against Berger, and alleging that
plaintiff's mortgage had been paid and discharged and was
no longer a lien on the premises, and prayed for a first

lien. Cross-petitioner Pitzer intervened and alleged that he was the equitable owner of the mortgage sought to be foreclosed in the name of plaintiff, and joined in the prayer of plaintiff's petition. The trial court found against plaintiff and cross-petitioner Pitzer, and awarded a first lien to H. A. Marr Grocery Company, successor in interest to H. J. Hughes & Company. Plaintiff and cross-petitioner have appealed.

In March, 1925, defendant Berger executed a mortgage for $5,000 to the plaintiff, to secure a loan of that amount. In February, 1926, defendant H. J. Hughes & Company, now H. A. Marr Grocery Company, obtained in the district court for Otoe county a judgment against Berger, which, subject to the above mortgage, became a lien against the mortgaged premises. In January, 1927, defendant Berger, by warranty deed, conveyed the mortgaged premises to cross-petitioner Pitzer, "subject to existing mortgage to Nebraska Central Building & Loan Association and all other liens of record." About September 15, 1927, Pitzer paid to the plaintiff the amount then due on its mortgage, and took the mortgage and note thereby secured, uncanceled, together with a release of the mortgage from the plaintiff and a letter from the plaintiff authorizing Pitzer to foreclose the mortgage at his own expense, in the name of the plaintiff, for Pitzer's benefit. Later, this action was instituted for the foreclosure of the mortgage.

The first question presented is whether the payment to plaintiff of the amount due upon its mortgage by Pitzer, he being then the owner of the equity of redemption, amounted to a payment and discharge of the mortgage.

It is evident, from the letter accompanying the note and mortgage at time of payment, that it was not the intention to discharge the mortgage, but that it should be held by Pitzer for his protection. The letter authorized him to foreclose the mortgage, for his benefit and at his own expense, in the name of the plaintiff, mortgagee. Clearly, it was not intended as a payment and discharge of the

mortgage. It is urged, however, that, by the acquisition of the mortgage in this manner, there was a merger of the lesser in the greater estate, or that the mortgage was merged into the fee simple title held by Pitzer.

The general rule applicable is: "Where the owner of premises acquires an outstanding mortgage thereon, his intention is the controlling factor as to whether there is a merger. If his intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appears to be his best interest as shown by all the circumstances." 46 A. L. R. 322, note 1.

In *Peterborough Savings Bank v. Pierce,* 54 Neb. 712, it is held: "Whether the two estates will be held to have coalesced will depend upon the facts and circumstances in the particular case, the then intention of the party acquiring the two estates, and the equities of the parties to be affected."

In *Citizens State Bank v. Petersen,* 114 Neb. 809, it is held:

"Ordinarily, when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the latter.

"But the mortgagee may in such case keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself."

These holdings were followed and approved in *Edney v. Jensen,* 116 Neb. 242.

The rule is firmly established in this jurisdiction that a merger does not occur where a party acquires two unequal estates in realty, if there is an intervening lien and it was the intention of the holder of the estates, at the

time of acquiring them, that merger should not occur. Under the facts disclosed by this record, it is clear that there was no merger intended by Pitzer.

Defendant H. A. Marr Grocery Company cites and relies upon a number of authorities where the holder of the fee, in taking conveyance, has, in that instrument, assumed and agreed to pay an existing lien. If that had been the case here, there would have been a direct obligation of Pitzer to pay the mortgage. In the instant case, however, Pitzer did not assume and agree to pay the mortgage. He was not personally liable thereon to the mortgagee for its payment. The authorities relied on are not in point.

Defendant H. A. Marr Grocery Company calls attention to the statute regulating building and loan associations, and particularly to section 8-309, Comp. St. 1929. That section, so far as applicable, is as follows: "No evidence of indebtedness taken by said association for the return of any loan shall be negotiable in form, and whatever be its form, every such evidence of indebtedness shall be nonnegotiable in law, and no such debt, or evidence of debt shall be assignable or transferable in any manner *so as to prevent the discharge thereof by payments to the association,* except that bonds and interest-bearing obligations in which temporary investments may be made as hereinbefore provided, may be converted into cash in due course." (Italics ours) It is contended that this provision entirely prevents a transfer of a building and loan mortgage, given by one of its members, to secure a loan of its funds to such member.

We think the provision of the statute against assignments was made for the protection of the borrowing member of the association, and was designed to permit him to make his payments in instalments to the association. In the instant case, Berger had transferred all his interest in the real estate. He has not sought, and of course, under the circumstances, would not seek, to make payments to the association. In any event, no one but the mortgagee

could complain of an equitable transfer of the mortgage. We think it is a generally accepted doctrine that the holder of nonnegotiable paper may transfer to another an equitable title to paper, but the transferee would take it subject to any defenses that could be urged by the maker.

It is evident that Pitzer intended to acquire the equitable title to the mortgage by the payment of the money to the mortgagee, and that the mortgage was not thereby discharged. The trial court should have awarded a foreclosure of the mortgage for the benefit of Pitzer as the equitable owner thereof.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter a decree in conformity with this opinion.

REVERSED.