HAROLD D. CURLEY, APPELLANT, v. WINNIE V. WHITE ET AL., APPELLEES: LEXINGTON STATE BANK, APPELLANT: LINDLEY-CAHOW COMPANY, INTERVENER, APPELLEE.

FILED NOVEMBER 8, 1935. No. 29285.

*J. T. Berquist* and *Cook & Cook,* for appellants.

*Shotwell, Monsky, Grodinsky & Vance, Frank M. Johnson* and *T. M. Hewitt, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and RYAN, District Judge.

RYAN, District Judge.

This is an action brought by the plaintiff to foreclose a certain real estate mortgage upon a tract of farm land located in Dawson county, Nebraska. The petition is in the usual form. A cross-petition was filed by the defend-

ant Lexington State Bank, asking foreclosure of a lien in the sum of $1,530.40 upon a partial assignment of the mortgage.

The appellee Lindley-Cahow Company, upon leave of court, filed a petition in intervention, alleging that it had an interest in the matter in litigation; that on December 20, 1932, the claim of intervener against the estate of Lemuel R. White, deceased, was duly allowed by the county court of Dawson county, Nebraska, in the sum of $12,260.-45; no appeal has been taken from the order of allowance of said claim; and that said order and judgment in favor of the intervener were final; and alleges further that the notes secured by said real estate mortgage were fully paid on or about February 4, 1932, and the indebtedness represented thereby fully and completely released, satisfied, discharged and extinguished, and that said mortgage and the lien thereof upon said real estate described in plaintiff's petition were fully and completely released, discharged and extinguished; that the purported assignment of the notes and mortgage by the original holder thereof, the Lexington State Bank, was not *bona fide,* but was fictitious and made for the purpose of fraudulently attempting to revive the debt and the lien after payment and for the purpose of defrauding the intervener and other creditors of the estate of Lemuel R. White, deceased; and that said purported assignment was made through collusion between the plaintiff, the cross-petitioner Lexington State Bank, and the defendant Winnie V. White as part of a conspiracy between said parties to defraud the intervener and other creditors of the estate of Lemuel R. White, deceased. Intervener prays the petition of the plaintiff and the cross-petition of the Lexington State Bank be dismissed, that the court adjudge that the indebtedness represented by the notes and mortgage set up and sought to be foreclosed has been fully paid, satisfied and discharged and that the same should be canceled of record.

To this petition of intervention answers were filed by the plaintiff and the cross-petitioner, the Lexington State

Bank. The answer of the plaintiff alleges that the defendant Winnie V. White, at the time of the execution of the notes and mortgage described in the petition, was a married woman and the wife of Lemuel R. White, and as such wife executed the notes and mortgage; that the aforesaid notes and mortgage were not executed in connection with any separate trade or business then carried on by the said Winnie V. White, and the said Winnie V. White was not then carrying on any trade or business of her own account, and that said Winnie V. White executed said notes and mortgage solely as a married woman to charge her interest in the real estate of her husband covered by said mortgage, and at the time of the execution and delivery of said instruments she had no separate property or estate whatever; that upon the death of said Lemuel R. White the defendant Winnie V. White received certain insurance money upon the life of said Lemuel R. White, the same being payable direct to her and not liable for the payment of any of the debts of said deceased, and that the insurance money so received was an amount in excess of $17,000; that said insurance money was received by her on or about February 4, 1932; that at said time the notes and mortgage set forth in the petition were owned and held by the defendant Lexington State Bank, and that on or about said date Winnie V. White purchased the said three notes for the principal sum of $5,000 each and the mortgage securing the same, and paid the bank therefor the sum of $15,123.96 out of the insurance money received by her; that at the time of the purchase of said notes and mortgage it was understood and agreed between Winnie V. White and the bank that said transaction should not constitute a payment or discharge of the mortgage indebtedness, and that the same should not be extinguished but should be kept alive and continued as a mortgage indebtedness against said land, and it was agreed between the parties that the bank should assign and deliver said notes and mortgage to such persons as Winnie V. White should direct; that by error and mistake the notes and mortgage were first assigned of

record by the bank to the defendant Winnie V. White; that thereafter, at the direction of Winnie V. White, the notes and mortgage were assigned and delivered to the plaintiff by the bank on the 11th day of August, 1933, and that the plaintiff is now the legal owner and holder thereof; that it was not the intention of Winnie V. White or of the bank, or either of them, that the sum paid by Winnie V. White should constitute a payment and discharge of the mortgage indebtedness, or any part thereof, but it was the intention of both parties, and that the actual transaction was that Winnie V. White individually purchased said mortgage and the notes secured thereby from the bank with the intention that it should continue in existence as a lien upon the real estate therein described, and that the same should not merge with the title to the mortgaged premises received by Winnie V. White under the will of Lemuel R. White, deceased, and that plaintiff is entitled to the foreclosure of the mortgage as prayed in his petition.

The cross-petitioner Lexington State Bank filed a similar answer to the petition of intervention. Winnie V. White, as executrix of the estate of Lemuel R. White, deceased, filed an answer in the nature of a general denial to the petition of intervention. The intervener filed a reply to her answer, denying every allegation therein contained except that Winnie V. White had paid the sum of $15,123.-96 to the Lexington State Bank.

The trial court found in favor of the intervener, found that the mortgage debt was paid and satisfied by Winnie V. White on February 4, 1932, and should be canceled of record; that the assignments were not *bona fide*, but were made as part of a conspiracy to revive the debt after it had been paid and extinguished. The court entered judgment dismissing the petition of the plaintiff and the cross-petition of the Lexington State Bank and canceling of record the mortgage and assignments thereof. The plaintiff and the cross-petitioner, Lexington State Bank, bring the case to this court on appeal.

Lemuel R. White was engaged quite extensively in the

feeding of live stock and at the time of his death on December 28, 1931, was the owner of a large amount of both real and personal property. Most of the real estate was heavily encumbered and he owed a considerable amount of unsecured debts. He had three life insurance policies of $10,000 each, of which Winnie V. White was the beneficiary. The said Winnie V. White received payment on each one of these policies some time in June, 1932, and out of the proceeds paid $7,385.75 at the Lexington State Bank, these policies having been assigned to the bank as collateral security. The balance of the insurance money, totaling a little over $17,000, the amount having been reduced somewhat by reason of the fact that an error was made in the age of the insured at the time the policy was written, was paid on February 4, 1932. At that time the Lexington State Bank was the owner and holder of the three $5,000 notes and the real estate mortgage securing the same which are sought to be foreclosed by the plaintiff in this action.

Winnie V. White testified that she inquired of R. F. Stuckey, president of the Lexington State Bank, if she might purchase the mortgage and invest her insurance money in it so that she might foreclose it and secure the home place as a home for herself and her sons, that, upon being assured that she could do this, she purchased the notes and mortgage from the Lexington State Bank. The notes were indorsed to her without recourse and an assignment of the mortgage executed to her on that date by the bank; that it was not her intention that the mortgage and notes should be paid and discharged, nor that the lien should merge with the title which vested in her by reason of the will of her deceased husband. The defendant Winnie V. White was named as the sole legatee and devisee in the will of Lemuel R. White and also designated as the executrix. The will was admitted to probate on February 15, 1932, in the county court of Dawson county.

R. F. Stuckey, the president of the Lexington State Bank, testified as to the conversations had between him and Winnie V. White on February 4, 1932, and strongly cor-

roborates her testimony. It was also testified by both parties that sometime later Mrs. White borrowed $1,500 from the bank and assigned one $5,000 note to the bank as collateral security for this loan.

The assignments of the notes and mortgage to the plaintiff were made on August 11, 1933, for the purpose of bringing the action of foreclosure. It is admitted that the plaintiff has no financial interest in the subject-matter of the litigation, but brought the action solely for the benefit of Winnie V. White. The assignments to the plaintiff, made on August 11, 1933, were dated March 2, 1933, and were made at the direction of the defendant Winnie V. White.

On behalf of the intervener two letters written by the defendant Winnie V. White to the intervener were produced in evidence. The first of these contains this statement: "I have the money from one policy, paid the note at the bank, am using a part of the remainder to buy corn and hay with. As soon as I get the remainder I want to pay off the mortgage on the home place." This letter was not dated, but was written some time between the 1st of January and the 4th of February, 1932. The second letter is dated February 27, 1932, and contains the statement: "I had some insurance money. I paid off a $15,000 mortgage and int. on this place."

Thomas H. Lindley, president of the intervener company, testified to the indebtedness owing the intervener by Lemuel R. White at the time of his death, and that he talked with Winnie V. White in June of 1932. In answer to the question, "Will you state whether or not she told you anything about the mortgage on the home place in any of those conversations, stating which one?" the witness replied: "I remarked to Mrs. White that it was too bad that she had tied her money up in the eighty at home as she would have been in shape to go on, and I would assist the boys the same as I had in the past with Lem. She said, 'Well, I can see that now;' 'but,' she says, 'Mr. Stuckey was bound that I would clean up this farm, on this eighty, so I have put my money

in there, but I can see that I should have kept my money so that I could do business with it.' "

Vern W. Vance, a member of the firm of attorneys representing the intervener, testified that he talked with Mrs. White on April 25, 1932; that he discussed the indebtedness of the estate and the mortgages upon the real estate. He testified: "She said that this home eighty and the other section and a half had been covered by a fifteen thousand mortgage to the Lexington State Bank, but that she had paid off that mortgage and it was then clear and was the only piece which was clear with the exception of the fact that the estate had an undivided one-third interest in another section of pasture land, joining, as I recall, the 960 acres which were a part of the estate. Q. Did Mrs. White, in that conversation, indicate to you that she had purchased the mortgage on that home place eighty? A. Nothing of the kind was ever mentioned or suggested." Mr. Vance further testified that he examined the records in the office of the register of deeds and found that the $15,000 mortgage had not been released of record.

The defendant Winnie V. White denies making the statements attributed to her and testifies: "Q. Did you make any statement at that time to Mr. Vance with reference to the $15,000 mortgage on the home eighty and the section and a half of pasture land? A. I did. I said that I held the mortgage." She also testified that in her letters she did not mean to convey the idea that the $15,000 mortgage had been discharged; that she was merely explaining to Mr. Lindley what disposition she had made of her insurance money.

The principal assignments of error made are: (1) That the findings and judgment of the court are contrary to law; and (2) that the findings and judgment of the court are not sustained by sufficient evidence.

The law of this state governing the propositions involved is well settled. The general rule applicable is: "Where the owner of premises acquires an outstanding mortgage thereon, his intention is the controlling factor as to whether

there is a merger. If his intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appears to be his best interest as shown by all the circumstances." 46 A. L. R. 322, note 1.

In *Peterborough Savings Bank v. Pierce,* 54 Neb. 712, it is held: "Whether the two estates will be held to have coalesced will depend upon the facts and circumstances in the particular case, the then intention of the party acquiring the two estates, and the equities of the parties to be affected."

In *Citizens State Bank v. Petersen,* 114 Neb. 809, it is held:

"Ordinarily, when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the latter.

"But the mortgagee may in such case keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself."

These holdings were followed and approved in *Edney v. Jensen,* 116 Neb. 242.

The rule is firmly established in this state that a merger does not occur where a party acquires two unequal estates in realty, if there is an intervening lien and it was the intention of the holder of the estates, at the time of acquiring them, that merger should not occur. Under the facts disclosed by the record in this case, as shown by the testimony of Winnie V. White and R. F. Stuckey, president of the Lexington State Bank, and corroborated by the fact that the mortgage was assigned and not released of record, and by the further fact that the Lexington State Bank afterwards made a loan to Winnie V. White and took a partial assignment of the mortgage as security therefor, it is clear

that there was no merger intended by Winnie V. White at the time she purchased the mortgage and the indebtedness secured thereby from the Lexington State Bank, and it is equally as clear that the cross-petitioner, Lexington State Bank, so understood the transaction.

The burden of proving that the assignments were not *bona fide* and were made as a part of a conspiracy between Winnie V. White and the cross-petitioner, Lexington State Bank, was upon the intervener, and in our judgment the proof falls far short of sustaining that burden.

Winnie V. White, at the time she signed and executed the notes and mortgage which she afterwards purchased, was the wife of Lemuel R. White, who at that time was the owner of the premises involved. While it is true that the notes contain the clause, "Each of us hereby personally charge our own separate estate with the payment of this note," it is undisputed that at the time of the execution of the notes she had no separate estate whatever. She had no separate trade, business or profession. She signed the notes with her husband to charge her interest as wife in the mortgaged lands.

The law is well settled in this state that the contract of a married woman can only be enforced against the separate estate which she possessed at the date of the contract. *Kocher v. Cornell,* 59 Neb. 315; *Giltner State Bank v. Talich,* 115 Neb. 236.

The statements made by Winnie V. White in her correspondence with the intervener are strongly relied upon by the intervener in this case. The most that could be made of them is that they might amount to an estoppel, but it is also a well-settled principle of law that, to be available either as a cause of action or a defense, estoppel must be specially pleaded. *Burwell Irrigation Co. v. Lashmett,* 59 Neb. 605; *Boales v. Ferguson,* 55 Neb. 565; *Diehl v. Johnson,* 123 Neb. 699; *Scheschy v. Binkley,* 124 Neb. 87.

It is also argued in the briefs that the insurance money with which the mortgage in question was purchased was not entirely exempt to Winnie V. White, and the briefs in-

clude computations as to how much was actually exempt. This question was not raised by the pleadings. The amount of the premiums paid, however, does appear in the record, and, according to our computation, a $500 annual premium would purchase slightly more insurance than the amount of this mortgage, and therefore the contention is without merit.

The judgment of the district court is therefore reversed and the cause is remanded, with directions to enter a decree of foreclosure as prayed in the petition and cross-petition.

REVERSED.