## PHEBE M. BROWN *vs.* DANIEL P. LAPHAM.

On the 2d of February, 1842, Brown, the husband of the demandant, made a mortgage of real estate, in which the demandant joined in a release of her dower to Farnam and Brayton, as administrators of Mason, deceased: Farnam and Brayton afterwards assigned the mortgage to Cole, as the guardian of the minor daughter and heir of Mason, and Cole assigned the same to Gaylord, his successor in that capacity: Brown, the mortgagor, became insolvent, both in his individual capacity and as a partner in the firm of Brown, Harris & company: In the mean time, Gaylord, as assignee of the mortgage, had brought a suit to foreclose the same, and had recovered judgment thereon, at the October term, 1847, of the C. C. P., but, before service of his writ of possession, Brown, the mortgagor, died: An arrangement was then made between Gaylord and the assignees in insolvency, in

pursuance of which, the mortgaged premises were sold, on the 12th of January, 1848, for more than enough to pay the mortgage debt, and were conveyed by the assignees with warranty, on the 11th of February following, to the purchaser: On the day of the sale, the assignees paid Gaylord the amount of the mortgage debt and expenses, out of the proceeds, and Gaylord thereupon assigned the mortgage to Plunkett and Brayton, the assignees in insolvency: Gaylord's ward having intermarried, the amount received on the mortgage was paid by him to Bulkley, the husband: The assignees in insolvency subsequently assigned the mortgage to the purchasers and tenants of the land, of whom the tenant was one; but the assignment was made without consideration, and without request of the assignees: It was held, that the widow of Brown, the mortgagor, was not entitled to dower in the premises.

SHAW, C. J. In this suit the demandant seeks to recover her dower in the described premises, of which it is conceded that her deceased husband was seized during the coverture; and her right to recover depends upon the question, whether she is barred by her release of dower, in the mortgage made by her husband, as set forth in the agreed statement of facts. As the conveyances, upon which the question depends, are somewhat numerous and complicated, it may be useful to state them, as nearly as possible, in the order of their dates.

On the 1st of February, 1842, Brown, the deceased husband, being then seized of the premises, by a deed, in which his wife, the present demandant, joined to release her dower, mortgaged the premises to Farnam and Brayton, as administrators of the estate of Levi Mason, deceased, conditioned for the payment of a sum of money belonging to the estate of Mason. Farnam and Brayton, as such administrators, assigned the mortgage to Cole, as guardian of Maria Mason, a minor, and sole heir at law of Levi Mason. Cole, as such guardian, after the appointment of a successor in the guardianship, assigned the mortgage to Gaylord, who had been appointed guardian of Maria Mason, and subsequently William P. Brown, the husband and mortgagor, both in his individual capacity and as a partner in the firm of Brown, Harris & company, went into insolvency, and in the due course of insolvent proceedings, Plunkett and Brayton were appointed assignees.

In the mean time, Gaylord, as such guardian, and assignee of the mortgage, brought a suit to foreclose the same, and at

the October term of the court of common pleas, in 1847, obtained a judgment in due form, and a writ of possession issued thereon; but before any service thereof, Brown died.

An arrangement was then made by and between Gaylord, assignee of the mortgage, and Plunkett and Brayton, the assignees in insolvency, who held the equity of redemption, as assets, for the benefit of creditors, that the mortgaged estate should be sold, and the proceeds applied, first, to pay and discharge the mortgage and expenses, and the surplus to go to the assignees, for the creditors of Brown.

The assignees sold the estate, accordingly, to Isaac Dean, for the sum of $3800, much more than enough to pay the mortgage debt, and gave him their deed with warranty, with an exception not affecting the present case.  This deed was dated the 11th of February, 1848, though the sale was made on the 12th of January of the same year.  On the 12th of January, 1848, the assignees in insolvency, out of the proceeds of the sale, paid Gaylord, the assignee of the mortgage, and holding a judgment therefor, the amount of the mortgage debt and expenses, and thereupon Gaylord assigned the said mortgage to Plunkett and Brayton, the assignees in insolvency. In the mean time, Maria Mason, the ward of Gaylord, had intermarried with Bulkley, and Gaylord paid over the amount thus received on the mortgage to Bulkley, the husband of his ward.

Recently, the assignees in insolvency have assigned this mortgage to the purchasers and tenants of the land so sold by them, of whom the defendant Lapham was one; this assignment being made without consideration, and without request from them.

The demandant, having thus joined with her husband in a mortgage to secure the payment of a debt, has barred herself of her right of dower, if necessary to give effect to her act of release; that is, so far as shall be necessary to secure the payment of the debt, for which the estate was thus hypothecated.

After such an alienation, she can only avoid the effect of

her deed, and be restored to her right of dower, in one of two modes : —

1. When the debt shall be paid and satisfied by the hus-band, or by some person acting in his behalf, and in his right, so that the mortgage is extinguished, by means of which the whole object and purpose of giving it is accomplished.

2. By a redemption by payment of the debt herself. The latter can only be sought by a process in equity, and tender-ing the payment of the mortgage debt. This not being such a process, and the demandant not having made any such payment, her right of redemption on payment of the mort-gage debt, is not open for consideration, in the present case. *Gibson* v. *Crehore,* 5 Pick. 146; *Eaton* v. *Simonds,* 14 Pick. 98.

The only question, then, in this case, is, whether the mort-gage debt, in contemplation of law, has been paid. The facts, as stated, are very complicated, and this mortgage has certainly passed through many changes; but, upon a careful analysis of those facts, the court are of opinion, that the mortgage debt has never been paid, so as to let in the plain-tiff to her right of dower without redemption.

In order to such payment, so as to extinguish the mortgage, the debt must be paid by the husband, or out of the hus-band's funds, or by some person, as personal representative, assignee, or person standing in some other relation, which, in legal effect, makes him mortgagor and debtor, and one whose duty it is to pay and discharge the mortgage debt.

Whether a given transaction shall be held, in legal effect, to operate as a payment and discharge, which extinguishes the mortgage, or as an assignment, which preserves and keeps it on foot, does not so much depend upon the form of words used, as upon the relations subsisting between the parties advancing the money, and the party executing the transfer or release, and their relative duties. *Gibson* v. *Crehore,* 3 Pick. 475.

If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage, and

relieve the mortgaged premises of the lien, a duty in the proper performance of which others have an interest, it shall be held to be a release, and not an assignment, although in form it purports to be an assignment.

When no such controlling obligation or duty exists, such an assignment shall be held to constitute an extinguishment or an assignment, according to the intent of the parties; and their respective interests in the subject will have a strong bearing upon the question of such intent.

But, upon examining the facts in the present case, it does not appear that this mortgage has ever been paid out of the funds of the plaintiff's husband, the mortgagor, or by any person bound to pay it, and standing in such a relation to him as to make it a duty to pay it. Nor is there any evidence to show, that any person holding this mortgage as mortgagee or assignee ever transferred or parted with it, with an intent to discharge or extinguish it, or that any one who advanced money for such transfer had any such intention.

The assignees are not the personal representatives of the debtor; they were under no obligation to pay Brown's debt. They might have sold the equity of redemption, leaving the mortgage unaffected. They in effect did so. They had a right to sell, and a power to make a good title, under the insolvent law, against every body, except the holder of this mortgage. They made an arrangement with him, by which they should sell and give a good deed, reserving a sufficient portion of the purchase money to meet the mortgage. When they came to pay this amount to the mortgagee, they took an assignment of the mortgage, for the benefit of the creditors of Brown, as it was their duty to do. It was their duty, because it would have been inequitable to take the money of the creditors to pay Brown's debt, and extinguish the mortgage, unless they could thereby bring the whole of the mortgaged estate, as an equivalent, into the assets in their hands for the benefit of the creditors.

The assignees of the insolvent estate then became assignees of this mortgage, so that the widow could not have redeemed

of them, without paying the mortgage debt. But the assignees had conveyed the estate of the insolvent, with a warranty against any such claim as that now made by this widow. They assigned this mortgage to the purchasers of the estate, of whom the defendant was one. It is said, that this was without consideration; but we understand this to mean, without the payment of any money, or other consideration given at the time. But, in effect, the consideration had been previously given by the defendant and the other purchasers, by paying the full value of the estate, as well the mortgage as the equity of redemption. They relied, for security against this claim, on the warranty of the assignees, which they could safely give, because they were themselves assignees and holders of the mortgage.

This assignment of the mortgage, being still subsisting and unpaid, was a good bar against this claim; the assignees had a right to transfer it to the purchaser, to sustain and make good their warranty, and it would be effectual for that purpose. This was a sufficient consideration, if consideration between assignor and assignee were necessary, to give effect to the assignment of a mortgage, as against the mortgagor.

In legal effect, the sale of the estate by the assignees, as the joint act of conveyance by Gaylord, the assignee of the mortgage, and by the assignees of the equity of redemption, was necessary to make a good title; and the purchaser became equitably entitled to the assignment of the mortgage, as well as to the conveyance of the equity of redemption. To accomplish this, the assignments were made, first, by Gaylord, the holder of the mortgage, to the assignees in insolvency, and then by them to the purchasers under them, in pursuance and as performance of such equitable obligation. It is the same thing, in legal effect, as if Gaylord had assigned his mortgage to the purchaser, and taken the amount of the mortgage, to the use of his ward, and the assignees had conveyed the equity of redemption to the same purchasers, and taken the balance of the purchase money, to the use of the estate of which they were the assignees. The

money would have been divided in the same manner, and gone to the same uses; and the defendants, as purchasers, would hold the same security as they do now. It is manifest, therefore, that the mortgage is a good and available security in their hands, against the plaintiff, for the amount for which she joined in hypothecating her right of dower; and that she can only be remitted to that right by a redemption, by payment of the debt. If it be suggested, that upon the assignment of the mortgage to Plunkett and Brayton, who had the equity of redemption, as assignees, there was a union of titles, which constituted a merger, and extinguished the mortgage, the answer is plain, founded on a well settled rule of law, that when any right, estate or interest intervenes between the particular and the general estate, which are thus united, no coalescence takes place, but each remains distinct. If the plaintiff had the right of dower claimed, it was a real interest in the estate intervening between the mortgage and the general right of redemption, which prevented a merger by the union of these titles.

*Judgment, on the agreed statement of facts, for the tenant.*

*F. O. Sayles,* for the demandant.

*J. C. Wolcott,* for the tenant.