.W. D. MATHEWS ET AL. V. SARAH M. JONES.

FILED MARCH 18, 1896. No. 6305.

1. **Merger of Estates.** Whenever a person acquires a greater
and a lesser estate in the same property and there is no
intervening estate, the lesser does not further exist as a
separate estate but is destroyed by or is considered in law
as merged in the greater, but when, in such a case, an
intention that the estates remain separate and distinct is
expressed or may be implied or inferred, no merger can
ensue but the intention will prevail.

2. **Mortgages: COLLATERAL NOTES: DEEDS: MERGER.** A mort-
gagee acquired the title to the mortgaged property, and
in the deed by which it was conveyed to him it was
stated that the title was passed "subject to a mortgage of
three hundred dollars which grantee hereby assumes and
agrees to pay." *Held,* That it was evident from this that
the intention was to continue the life of the lien of the
mortgage and no merger ensued as between the parties,
or against a *bona fide* purchaser of the notes secured by
the mortgage, and the deed, if recorded, was notice of the
fact of such intention to parties who subsequently pur-
chased the premises, and also afforded such notice to
parties to whom it was so exhibited as to bring to their
knowledge the existence of the clause in the deed, and
who afterwards bought the property.

3. **Vendor and Vendee: MORTGAGES: RELEASE: BONA FIDE
PURCHASERS OF NOTES.** Where parties before buying real

estate examine the records and find the property to be encumbered by a mortgage, and apply to the mortgagee for information and are by him told that he has received a conveyance of the title, and a deed from the mortgagor to the mortgagee conveying the property is exhibited to them, and such deed contains a clause by which the grantee assumes and agrees to pay the indebtedness secured by the mortgage, and they subsequently buy the property at a time when, to their knowledge, the mortgage debt had not matured, they are chargeable with such notice as required them to make further inquiry and are not innocent purchasers, and a *bona fide* purchaser of the mortgage notes, at a date prior to the time of the purchase of the property by such parties, may enforce the mortgage as against their rights, and this, notwithstanding at the time they purchased the premises the mortgagee released the lien of the mortgage of record.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

*H. M. Uttley,* for plaintiffs in error.

*Loomis & Abbott, contra.*

HARRISON, J.

It appears from the pleadings and evidence in this case that lot 3, in block 17, Nye-Hawthorne Addition to the city of Fremont, was conveyed by C. H. Toncray to R. H. Taylor by warranty deed, the deed, according to its recitations, being executed October, 1888. Neither the statement in regard to time of the signature nor acknowledgment named the day of the month of October on which the act was done. The consideration expressed in the deed was $600. On October 1, 1888, a promissory note in the sum of $300, due October 1, 1891, also notes evidencing the amounts of semi-annual interest to be paid on the sum stated in the principal note, from its date until maturity, were

executed and delivered by R. H. Taylor to Toncray, and these notes, all secured by a mortgage on the lot hereinbefore described, conveyed by Toncray to Taylor. The mortgage was signed by Taylor and wife, of date October 1, 1888, and acknowledged October 12, 1888. Both deed and mortgage were filed for record October 18, 1888. Of date October 5, 1888, a warranty deed for the same premises was executed and acknowledged by Taylor and wife, and delivered to Toncray. This deed was not placed on the record until August 27, 1890. At some time during the month of June, 1890,—the exact date does not appear,— one W. D. Mathews purchased, or bargained with Toncray for, the property, and on August 27, 1890, was given a deed for it, which was recorded on the same day. On the day prior, August 26, 1890, Mathews and wife had made and delivered a deed conveying the premises to Charles A. Manville, which was filed for record August 27, 1890, and on this same day Toncray released by entry on the margin of the record the mortgage which he had received from Taylor. Long prior to this time, or in October, 1888,—the date was not definitely shown,—Toncray had assigned the notes secured by the mortgage to the defendant in error herein. There was a failure to pay the principal note and some of the interest notes, and defendant in error instituted this action to enforce collection by foreclosure of the mortgage, and seeking a reversal of the decree in her favor rendered in the district court, the case was brought to this court by error proceedings.

The plaintiffs in error admitted in the district court, both in pleading and as a matter of evidence, the execution and existence of the mort-

gage in suit, and the notes secured thereby; de-
nied the transfer of the notes to defendant in
error, or sufficiently so to demand proof thereof,
and Mathews asserted that in June, 1890, when
he was bargaining with Toncray, having in view
the purchase of the lot, he examined the records
of Dodge county, the county wherein the real
estate was situate, and discovered the title, as
shown by the record, to be in R. H. Taylor, incum-
bered by the mortgage in suit, and, upon inquiry
made to Toncray in regard to it, was by him
shown the deed from the Taylors to Toncray, and
was informed by Toncray that its not having been
recorded was because of neglect, inattention, or
forgetfulness on his part, that he would have it
made of record at any time desired, and would
also execute a release of the mortgage.    Manville,
who claims to have purchased of Matthews, also
pleads that he examined the records in reference
to this property August 26, 1890, the date of his
purchase, or of the deed by which the property
was conveyed to him; that the record disclosed
the title to be in Taylor, incumbered by the mort-
gage to Toncray; that he applied to Toncray for
further information, and was shown the convey-
ance from Taylor to Toncray, and was told that
because of neglect on Toncray's part it had not
been presented for record and that he would at-
tend to it any time, and would also discharge
the mortgage of record.    Each of plaintiffs in
error claims to have placed reliance, in purchas-
ing the lot, upon the record, combined with the
examination of the deed exhibited by Toncray
and his statements and agreements, and the sub-
sequent recording of the deed and release of the
mortgage and the apparent condition of its title

as so shown and established; and further, being
without any knowledge or notice of the transfer
of the notes secured by the mortgage to defendant
in error, and her consequent ownership of the lien,
that they were innocent purchasers and are enti-
tled to protection as such; that as against them
and their rights the lien should not and will not
be enforced; that conceding to defendant in error
the purchase, in good faith, of the notes, and her
resulting ownership of the mortgage and right to
its due enforcement, yet, as she failed to take an
assignment of it in writing and to have the same
recorded, she put it in the power of Toncray, the
mortgagee, to harm or wrong plaintiffs in error,
and the mortgage must be held to be of no force
as against the rights they acquired by the convey-
ance to them respectively. They further assert
that when Toncray received from Taylor and wife
a deed conveying to him the title to the lot there
was vested in him both title and lien, they were
united in one party, or there was a merger and the
mortgage lien was discharged or extinguished.
The plaintiffs in error agree in the statement that
when the deed from Taylor to Toncray was made
it contained the following recital: "Subject to a
mortgage of three hundred dollars, which grantee
hereby assumes and agrees to pay," and that they
noticed it when the deed was exhibited to them by
Toncray. It must further be borne in mind that
the transactions by which Mathews and finally
Manville became owners of the lot were of time
several months prior to the maturity of the prin-
cipal note secured by the mortgage.

It is argued in the briefs filed for plaintiff in
error that the deed from Taylor to Toncray, being
executed on October 5, 1888, and the mortgage,

although dated and presumably signed on October 1, 1888, was not acknowledged until October 12, 1888, could not have been delivered to take effect until after its acknowledgment, and consequently the title was not in Taylor when he executed the mortgage, but had been conveyed to Toncray, hence the mortgage could not and never did have any real existence. It must be remembered that Toncray conveyed this lot to Taylor and that the consideration expressed in such conveyance was $600. This deed was made in October, 1888, and it and the mortgage in suit were both filed for record on the same day, October 18, 1888. The mortgage was for $300, the one-half of the apparent purchase price of the property. From these facts it is quite evident that the mortgage was given to secure a portion of the purchase price of the lot, the conveyance by Toncray to Taylor and mortgage from Taylor to Toncray were but parts of the one transaction and the mortgage intended to create a lien on the property, and that by it the intention was fully met and accomplished. The plaintiffs in error, and each of them, scanned the record before purchasing and by it were informed of the existence of this mortgage as a subsisting lien on the premises, and when Toncray exhibited to them the deed to him from Taylor, of date October 5, 1888, they obtained the information that the mortgage was a lien on the lot; that Toncray, the immediate source of the title to Mathews, recognized it as such, and not only this, but he assumed and agreed to pay it. Surely they are in no position to ask, nor is there any valid reason to be urged in their behalf, to induce us to alter the relations and conditions established by these different conveyances as in-

tended and recognized by the original parties to them; further on this point, during the trial it was admitted as evidential matter, as follows: "It is admitted by all the parties appearing to this suit that at the time R. H. Taylor and wife made the notes and mortgage set out in plaintiff's petition, that the said R. H. Taylor was the owner in fee-simple of the real estate described in the said mortgage." This, it seems, must have been meant to apply to, and put at rest, the subject or question of the apparent conflict in this particular, disclosed by an inspection of the dates of the several conveyances executed by the parties and involved by this question.

It is contended that when Toncray, the mortgagee, received the title to the lot by conveyance from Taylor, all the interests vested in him and were united; that there was a merger and it operated an extinguishment of the lien of the mortgage. On the subject of merger, in the opinion in the case of *Miller v. Finn*, 1 Neb., 254, written by MASON, C. J., it was said: "It is said the general rule is that whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less is immediately annihilated, or, in the law phrase, is said to be merged, that is, sank or drowned in the greater. (*James v. Morey*, 2 Cow., 284; 2 Blackstone, Com., 177.) * * * In Co. Litt., 388, it is said: 'Mergers were not favored in courts of law and still less in courts of equity.' They are never allowed unless for special reasons, and then only to preserve the intention of the parties. (*Phillips v. Phillips*, 1 P. Wm., 41.) When there is a union of rights, equity will preserve them distinct if the intention so to do is either express or implied;"

and it was held: "There can be no merger when the intention to keep the estates distinct may be inferred or has been expressed." (See, also, *Ætna Life Ins. Co. v. Corn*, 89 Ill., 170; *Shaver v. Williams,* 87 Ill., 469; *Richardson v. Hockenhull*, 85 Ill., 124; *Worcester Nat. Bank v. Cheeney*, 87 Ill., 602.) In the case at bar the mortgagee transferred the notes to the defendant in error and the ownership of the mortgage followed them, and in the deed from Taylor to Toncray, by which the latter took the title, the existence of the mortgage as an incumbrance on the title was set forth and he assumed and agreed to pay it. We think the intention that no merger or extinguishment of the mortgage lien was to be effected clearly appeared, or was to be inferred, and sufficiently so to charge the purchaser cognizant of the facts, as were the plaintiffs in error, with knowledge or notice of it. (*Ætna Life Ins. Co. v. Corn*, 89 Ill., 170; 1 Jones, Mortgages, secs. 870, 872.)

It is strenuously insisted that it was negligence on the part of defendant in error not to obtain a written assignment and have it recorded; that lack of such action placed in the hands of Toncray the power, by releasing the mortgage of record, to commit a fraud, and that it calls for the application of the rule that where one of two innocent parties must suffer loss, it must be borne by the one who, by negligence, placed it in the power of another to perpetrate the fraud; and that, under its application to the facts as developed in this case and its enforcement, defendant in error must bear the loss and should not have been granted a decree of foreclosure. This view is as earnestly combated in argument by counsel for defendant in error. The direct and main question involved

was discussed in an opinion written by NORVAL, C. J., in the case of *Whipple v. Fowler*, 41 Neb., 675, and it was held: "A satisfaction entered on the record by a mortgagee, after he has sold and delivered the notes secured by the mortgage to a third party, will protect a subsequent mortgagee in good faith or *bona fide* purchaser of the mortgaged premises, in case he had no notice at the date of the purchase, or the payment of the consideration, that the debt was assigned, or was unpaid, or that the release was unauthorized, but as to all other persons the lien of the mortgage will not be impaired;" but, as we view the facts and circumstances of the case at bar, a discussion or re-examination of this subject, even if it was deemed best to be made, is not necessary to a determination of the question, which we think a controlling one in this branch of the case, in respect to the relative rights of the parties. This is, were Mathews and Manville *bona fide* purchasers of the property? If they were, then the other and further question which counsel have argued would arise and call for an answer. If not, it is not necessarily involved, or to be decided. They examined the record, and it disclosed the incumbrance or mortgage in suit, in favor of Toncray. On application to the mortgagee they were shown a deed from the mortgagor to him, unrecorded, which contained a statement that the title was conveyed to him subject to the incumbrance, and also that he assumed and agreed to pay it, and further, at the time these matters occurred and the property was conveyed to them respectively, the principal note secured by the incumbrance was not due. It was more than a year before its maturity. A knowledge of these facts was suffi-

cient to make it their duty, before purchasing, to ascertain the whereabouts and ownership of the notes and mortgage, to put them upon inquiry, and, having such notice and failing in the ensuing duty, they cannot now claim and be accorded the privileges and rights of *bona fide* purchasers. (*Purdy v. Huntington*, 42 N. Y., 334.) It follows that the judgment of the district court must be

AFFIRMED.