HENNINGSMEYER et al. v. FIRST STATE BANK OF CONROE. (No. 107.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 14, 1916. Rehearing Denied Feb. 14, 1917.)

1. VENDOR AND PURCHASER ⬅266(1)—VENDOR'S LIEN—MERGER.

There was no merger of a vendor's lien retained in deed of M. to S. and in notes taken in payment, when the lands were reconveyed to

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

M. by deeds by which he assumed payment of the notes; evidence of the indebtedness not being canceled or surrendered, or the lien released, and M. afterwards assigning the notes as collateral.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 717.]

2. VENDOR AND PURCHASER ☞265(2) — NOTICE OF LIEN — RECITALS IN RECORDED DEEDS.

One who purchased land of M. after he had conveyed it to S. by deed retaining vendor's lien, and after it had been reconveyed to M. by deeds by which M. assumed payment of the vendor's lien notes, was put on inquiry, by the recitals of the recorded deeds, as to the notes being in the hands of another as collateral security for a debt of M.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 702–708.]

Appeal from District Court, Montgomery County; J. Llewellyn, Judge.

Suit by the First State Bank of Conroe against Fred Henningsmeyer and others. Judgment for plaintiff, and the named defendant and another appeal. Affirmed.

W. N. Foster and Howard Bennette, both of Conroe, for appellants. A. L. Kayser, of Conroe, for appellee.

BROOKE, J. This suit was instituted by the appellee, First State Bank of Conroe, against C. Julian Smith, Hale M. Houston, Chas. B. Poponoe, M. E. Stevens, Mrs. Lena Montgomery, individually and as independent executrix of the estate of Jack Montgomery, deceased, and appellants, Fred and Mary Henningsmeyer, by petition filed February 25, 1915. Plaintiff declared upon a note for $1,-372.80, made by defendant M. E. Stevens and Jack Montgomery to plaintiff on December 28, 1911, which note was alleged to be a renewal of a note for $1,320 made by the same parties to the plaintiff bank on the 3d day of June, 1911. It was further alleged that on the 3d day of June, 1911, at the time the original note was made to plaintiff by said defendant Stevens and Jack Montgomery, they delivered to plaintiff, as collateral to secure said note, two certain vendor's lien notes, each for the sum of $450.67, dated March 2, 1910, executed and delivered by the defendants C. Julian Smith and Hale M. Houston to said Jack Montgomery, payable in one and two years afterward, respectively; and it was further alleged in plaintiff's petition that said notes of said Smith and Houston were given as a part of the purchase price to said Jack Montgomery for two tracts of land described in said petition, which it is alleged were conveyed by the said Jack Montgomery to the said Smith and Houston on March 2, 1910, and that in said deed and notes a vendor's lien was reserved and retained against said land, to secure the payment of said notes. Plaintiff further specifically alleged that on the 9th day of May, 1910, the said Smith and Houston, by a deed of that date, conveyed said land to

Chas. B. Poponoe and Jack Montgomery, for a cash consideration then paid and the further consideration recited in said deed of the assumption by said grantees of the payment of said two notes, meaning the two vendor's lien notes which Smith and Houston had theretofore made to Jack Montgomery; and it is further alleged that on February 23, 1911, the said Chas. B. Poponoe by deed of that date conveyed his half interest in said land to Jack Montgomery, a part of the consideration for which said conveyance being the assumption by said Jack Montgomery of the payment of half of the two promissory notes hereinbefore mentioned. Plaintiff further alleges that after the defendants Stevens and Jack Montgomery had on June 3, 1911, executed the original note to plaintiff bank, and delivered to it the two vendor's lien notes, as collateral, the said Jack Montgomery, on the 10th day of June, 1911, sold to the defendants Fred and Mary Henningsmeyer the north half of said two tracts of land, and on the 29th day of July, 1911, sold to them the south half thereof, and it was alleged that at the time of such purchase the defendants Henningsmeyer, appellants here, had actual and constructive notice of all the facts regarding said notes. Plaintiff, among other things, prayed for foreclosure of the vendor's lien asserted by virtue of the two said notes on the land described in said petition, as against all of the defendants.

The defendants Fred and Mary Henningsmeyer answered by general and special exceptions, and pleaded a general denial; that the vendor's lien retained by Jack Montgomery at the time he sold and conveyed to the defendants Smith and Houston, and the title conveyed to said Smith and Houston by deed of May 2, 1910, and all title and claim of every kind and character became vested in the said Jack Montgomery, on February 23, 1911, when defendant Poponoe conveyed his interest in said land to said Montgomery, and that thereupon all such rights, title, and interest in said land and the notes and liens referred to became merged, and thereafter so remained solely in the said Jack Montgomery until he conveyed said land to the defendants Fred and Mary Henningsmeyer; and it was further alleged that in the purchase of said land from the said Jack Montgomery, said defendants Fred and Mary Henningsmeyer had no notice or knowledge that plaintiff held the two vendor's lien notes described, and in so purchasing that they paid a valuable consideration, and were bona fide purchasers for value without notice of any outstanding rights, equities, or claims in behalf of plaintiff, or any other person.

The defendants C. Julian Smith and Hale M. Houston answered by general and special demurrers, and for special answer, a general denial, merger of the notes executed by them, and their extinguishment by reason of the

recitations of title by Jack Montgomery by and through deeds by which payment of said notes was assumed by him.

The defendant Mrs. Lena Montgomery, as independent executrix of the estate of Jack Montgomery, and individually, answered by exceptions and denial. Defendant M. E. Stevens answered by general denial and special pleas. He also set up a cross-action against Mrs. Lena Montgomery as independent executrix of Jack Montgomery. The defendant Chas. B. Poponoe failed to answer.

When the case was called for trial, plaintiff dismissed as to the defendants C. Julian Smith and Hale M. Houston, and prior to judgment plaintiff likewise dismissed as against the defendant Chas. B. Poponoe. Trial was had before the court, without a jury, and on the 14th day of October, 1915, judgment was rendered in favor of plaintiff against the defendants M. E. Stevens and Mrs. Lena Montgomery, executrix of the last will of Jack Montgomery, deceased, for the amount of the note sued on, dated December 28, 1911. Judgment was likewise awarded plaintiff against Mrs. Lena Montgomery as independent executrix of the last will of Jack Montgomery for the sum of the two vendor's lien notes aforesaid, and for foreclosure of the vendor's lien retained in said notes on the land described against the defendants Mrs. Lena Montgomery, executrix, M. E. Stevens, and appellants, Fred and Mary Henningsmeyer, with order of sale in accordance therewith, the proceeds to be applied to the payment of the judgment awarded on the notes of said Jack Montgomery and defendant M. E. Stevens.

No judgment was awarded against Mrs. Lena Montgomery in her individual capacity, and defendant M. E. Stevens was denied any recovery on his cross-action.

On the second day after said judgment, to wit, October 16, 1915, the defendants Fred and Mary Henningsmeyer filed their motion for a new trial, which motion was by the court on the same day overruled, and thereupon said defendants duly excepted and gave notice of appeal to this court. And thereafter appeal bond (and supersedeas) was filed November 4, 1915. The statement of facts and bills of exceptions were filed by appellants within the time prescribed by law and the orders of the trial court. On request of appellants the court filed findings of fact and conclusions of law, all of which were objected and excepted to by appellants. This case is therefore regularly before this court for review.

The court filed his findings of fact and conclusions of law, as follows:

### "Findings of Fact.

"(1) I find that on the 2d day of March, 1910, Jack Montgomery by deed of that date, conveyed to C. Julian Smith and Hale M. Houston the two tracts of land described in plaintiff's petition, as the consideration therefor, said deed re-

citing $45.67 in cash and the two certain promissory notes, of even date with said deed, in the sum of $450.67 each, one due and payable 12 months from date, the other due and payable 24 months after date, drawing 7 per cent. interest, payable to Jack Montgomery or order. Said deed expressly retaining in its face the vendor's lien to secure said two notes, and being properly acknowledged and recorded in volume 27, p. 366, of the Deed Records of Montgomery county, Tex., having been filed for record on March 8, 1910.

"(2) I find that on May 9, 1910, C. Julian Smith and Hale M. Houston by their deed conveyed to Jack Montgomery and Chas. B. Poponoe said two tracts of land described in plaintiff's petition, the consideration for said conveyance being, as recited in said deed, as follows: '$451.00 in cash, the receipt of which is hereby acknowledged and confessed, and the assumption by the grantees hereof of the payment of two certain promissory vendor lien notes, dated March 2, 1910, one in the sum of $450.67, and the other in the sum of $450.68, one due and payable 12 months after date, the other due and payable 24 months after date, each drawing 7% interest and each carrying a vendor's lien on the land as described below, have granted,' etc. * * * Said two notes, payment of which was assumed by the grantees Jack Montgomery and Chas. B. Poponoe, were the same two notes given by Smith and Houston and recited in the deed from Jack Montgomery to them, and are the same two vendor lien notes mentioned and described in plaintiff's petition. The deed from C. Julian Smith and Hale M. Houston back to Jack Montgomery and Chas. B. Poponoe, in addition to the recitations above set out in this paragraph, also expressly retains the vendor's lien to secure said two notes aforesaid. This deed was filed for record on May 20, 1910, and is recorded in volume 58, page 293, of the Deed Records of Montgomery County, Tex.

"(3) I find that on February 23, 1911, Chas. B. Poponoe conveyed to Jack Montgomery his one-half undivided interest in and to the lands in question, for a consideration recited in said deed of $100 in cash and the assumption of the payment by the said Jack Montgomery of said Poponoe's half of the said two vendor's lien notes, mentioned in the preceding paragraph, which said deed was filed for record March 10, 1911, and recorded in volume 62, page 459 of the Deed Records of Montgomery County, Tex.

"(4) I find that on the 3d day of June, 1911, the plaintiff, the First State Bank of Conroe, Tex., in the due course of business, loaned to Jack Montgomery and the defendant M. E. Stevens the sum of $1,320, the said Montgomery and Stevens executing their joint promissory note to said bank for the same, to which note the said Jack Montgomery attached, as collateral security for the same, said two vendor's lien notes, mentioned and described in the preceding paragraphs hereof, and delivered the whole to said bank, stating and representing to its cashier that said two vendor's lien notes, so attached as collateral security, were good, and out of which, together with some other notes, the whole of said debt could be made, and the bank made said loan and paid out said money in good faith and upon said representations, and believing said collateral security to be good, and relying upon the same; that said note of Jack Montgomery and M. E. Stevens, aforesaid, of date June 3, 1911, was renewed by their renewal note of date December 28, 1911, due July 2, 1912, covering said indebtedness and to which was attached and continued said collateral security and agreements in reference thereto, said renewal note being the note sued on herein.

"(5) I find that it was not the intention of Jack Montgomery to extinguish the debt represented by said two vendor's lien notes described

above, when said property was reconveyed to him as set out aforesaid, nor to extinguish the lien securing the same, nor merge said lien with the superior legal estate, and I find that there was no merger of said lien with said superior estate, and that the intention not to merge the same, but to hold said indebtedness, represented by two said vendor's lien notes and the lien securing the same intact and separate from said superior legal title was disclosed of record by the recitations in said deeds back to Jack Montgomery; and I further find that the recitations in said deed from Smith and Houston and Poponoe aforesaid, that Jack Montgomery assumed the payment of said two vendor's lien notes, constituted notice to all persons subsequently dealing with said property that said notes were outstanding, and constituted a valid lien against the property. I further find that Jack Montgomery assumed the payment of said two vendor's lien notes, and became primarily liable to the holder thereof for the payment of same.

"(6) I further find that said two vendor's lien notes aforesaid retain in their face the vendor's lien against the property described in plaintiff's petition to secure the same; that the same was and is a valid, subsisting and unsatisfied lien against said property and premises to secure the indebtedness evidenced by said notes.

"(7) I find that Jack Montgomery died about the —— day of March, 1914, leaving a will in which Mrs. Lena Montgomery was made independent executrix and sole devisee, and that said will was duly probated by the probate court of Montgomery county, Tex., and that: the said Mrs. Lena Montgomery, is the independent executrix of the last will of Jack Montgomery, deceased.

"(8) I find that there is due and unpaid on the renewal note executed by Jack Montgomery and M. E. Stevens, of date December 28, 1911, the sum of $1,451.74 principal, interest, and attorney's fees; this being the note mentioned and described in plaintiff's petition, upon which suit is brought.

"(9) I find that there is due and unpaid upon said two vendor's lien notes, mentioned and described in paragraphs 1, 2, and 3 herein in these findings the sum of $1,352.71, principal, interest, and attorney's fees, these being the notes attached to the note of Montgomery and Stevens described in preceding paragraph as collateral security therefor, and in this connection I find that said notes have been in possession of the bank as such collateral security, continuously since the 3d day of June, 1911, and while said notes are payable to Jack Montgomery or order and are not indorsed by him, yet I find there was an equitable assignment of the same from Jack Montgomery, authorizing their collection and application to the principal indebtedness which they secured.

"(10) I find that on the 10th day of June, 1911, and after said notes were acquired by the bank, that Jack Montgomery conveyed by general warranty deed to the defendants Fred Henningsmeyer and wife the north half of the two tracts of land described in the plaintiff's petition, for a consideration of $780 then paid by the said Henningsmeyer; that said sum was a fair and reasonable value for said land; and that on July 29, 1911, the said Jack Montgomery conveyed to the defendant Fred Henningsmeyer the south half of said two tracts of land described in plaintiff's petition, for a consideration of $780, paid, and to be paid as follows: $180 in cash and four vendor's lien notes of $150 each; that said consideration was in fact paid, and the same was a fair and reasonable value for said land.

"(11) I find that at the time of the purchase of said land by the said Henningsmeyer the plaintiff bank held the two vendor's lien notes given by Smith & Houston, payment of which Montgomery had assumed, and that at the time of said purchase by said Henningsmeyer, he,

the said Henningsmeyer, had notice that said two vendor's lien notes were outstanding against said land, said notice being conveyed by the recitations in the deed from Smith and Houston back to Montgomery and Poponoe and from Poponoe to Montgomery, to the effect that the said Montgomery assumed the payment of said two vendor's lien notes, said two deeds being in Henningsmeyer's chain of title.

"(12) I further find that the said recitations in said deeds conveying said land back to Montgomery were sufficient to put an ordinarily prudent person upon inquiry regarding said notes and the lien securing the same, and that said inquiry properly prosecuted would have disclosed the existence of said debt and the lien securing the same. I find that the said Henningsmeyer did not examine the Records of Deeds of Montgomery County, Tex., affecting the title to said land, before purchasing the same, nor did he use the diligence which an ordinarily prudent person should have used in prosecuting such inquiry.

"(13) I find that defendants Fred Henningsmeyer and wife were not innocent purchasers of the land in question without notice of said two outstanding vendor's lien notes, which Jack Montgomery had assumed to pay, and which were held by the bank as collateral at the time of Henningsmeyer's purchase of the land.

"(14) I find that the holding and keeping of said lien securing said two vendor's lien notes separate and distinct from the superior title upon the reacquisition of said land by Jack Montgomery, and the said Montgomery's subsequent dealing with and handling of said notes and using of same as collateral security for the purpose of borrowing money was entirely consistent with an honest purpose; the intention so to do being clearly reflected by the recitals in the reconveyance deeds to him.

"(15) 'I find as a fact that at the time of the reacquisition by Jack Montgomery of the Smith and Houston and Poponoe claims, in reality the said Smith and Houston two vendor's lien notes were outstanding and held by parties other than Jack Montgomery. This finding is based upon the recitations contained in the deed from Smith and Houston back to Montgomery and from Poponoe back to Montgomery, to the effect that, in consideration of such reconveyance, the' said Montgomery assumed the payment of said two notes; and the further fact that M. E. Stevens, who was a partner of the said Jack Montgomery at the date of the making of said original loan from the bank, testified on the trial of this cause that the said Jack Montgomery told him when said loan was being negotiated that he, the said Montgomery, had some collateral up at the other bank, to wit, Bank of Griffith & Son, and that he would withdraw some of the same and use it to secure the loan; there being no evidence whatever to the contrary.

"Conclusions of Law.

"1. I conclude that the plaintiff is entitled to recover against the defendants Mrs. Lena Montgomery, as independent executrix of the last will of Jack Montgomery, deceased, and M. E. Stevens the sums set out in the judgment, being the amount due and unpaid upon the renewal note executed by Jack Montgomery and M. E. Stevens on the 28th day of December, 1911.

"2. I conclude as a matter of law that the assumption of the payment by Jack Montgomery of the two Smith and Houston vendor's lien notes inured to the benefit of the holder of said notes, and rendered the said Jack Montgomery liable thereon, and therefore the plaintiff is entitled to recover against Mrs. Lena Montgomery, independent executrix of the last will of Jack Montgomery, deceased, in the amount due on said two vendor's lien notes, and that the lien securing said notes followed said indebted-

'ness, and therefore plaintiff is entitled to a foreclosure of said lien.

"3. I hold as a matter of law that there was no merger of the lien securing said two Smith and Houston notes, with the superior legal estate, and that the same were in the hands of the bank secured by a valid and subsisting vendor's lien against the land described in plaintiff's petition.

"4. I hold as a matter of law that the defendants Fred and Mary Henningsmeyer, at the time of their purchase of the land in question, had notice that said two vendor's lien notes aforesaid were outstanding in the hands of some person other than Jack Montgomery, the said Jack Montgomery by reason of his assumption of the payment of said notes, as recited in said reconveyance from Smith and Houston and Poponoe to him, became primarily liable to the holder of said notes, and in legal effect became the payor of the same, and, said recitations and agreements appearing in the chain of title of the said Henningsmeyer, he was charged with knowledge of the same under the law as though he had in fact inspected said instrument. I hold that said recitation in said deeds back to Jack Montgomery that he, the said Jack Montgomery, assumed the payment of said two vendor's lien notes was notice in law to the said Henningsmeyer and wife at the time of their purchase that said notes and the lien securing the same were outstanding and unsatisfied.

"5. I conclude that the facts set out in the foregoing findings constituted an equitable assignment of said vendor's lien notes from Jack Montgomery to the bank, and conveyed to plaintiff a sufficient interest therein to authorize it to collect said collateral and apply the same to the principal indebtedness; said notes having been placed with the bank for the express purpose of securing said indebtedness.

"6. I conclude that the plaintiff is entitled to a foreclosure of said vendor's lien securing said two collateral notes against the property described in plaintiff's petition, as against all the defendants, and that it is entitled to have said property sold and the proceeds applied to the payment of said notes to the extent of the principal indebtedness against Montgomery and Stevens, and the remainder, if any, delivered to the independent executrix of the last will of Jack Montgomery, deceased.

"7. I conclude that it is immaterial, as a matter of law, whether or not the two Smith & Houston vendor's lien notes were in reality outstanding at the time of the reconveyance of the land to Montgomery by Smith & Houston and Poponoe, since it is clear that there was no intention to merge said lien securing said notes with the legal title, and in fact no merger therewith took place, and the intention not so to do being clearly apparent from said recitations, contained in said deeds of reconveyance aforesaid."

The contentions of appellants, as evidenced by their several assignments, are: (a) At the time Jack Montgomery placed the two vendor's lien notes with the plaintiff bank, and for some time prior thereto, all title to the land upon which foreclosure was decreed by the trial court, including the vendor's lien evidenced by said notes and the equitable title which Montgomery had parted with at the time he acquired said notes, had become vested in said Montgomery, and that all title and liens had become merged, and the lien thereby extinguished, and that Montgomery had all the title at the time he executed the deed to appellants, and that they thereby acquired good title, free from any liens. (b)

That all title, legal and equitable, was vested in Jack Montgomery when Poponoe conveyed to him by deed dated February 23, 1911, and that if the act of Jack Montgomery in thereafter placing the vendor's lien notes with the plaintiff bank was effective to create a lien on the land in favor of the bank for the security of said notes, appellants had no notice, actual or constructive, of such fact, when they purchased from Montgomery the land, and paid therefor a valuable consideration, and that they were therefore innocent purchasers for value, without notice.

[1] We cannot agree with either of the contentions of appellants. A merger has been defined to be when a greater and lesser estate meet in the same person, with no intermediate estate. Kilgore v. Graves' Heirs, 2 Willson, Civ. Cas. Ct. App. § 409. It has also been held that in equity the question as to whether estates merged depends on the intention of the parties, and the circumstances, and whether justice requires that they should be kept separate. Cole v. Grigsby, 35 S. W. 689, affirmed in 89 Tex. 223, 35 S. W. 792.

Mergers are not favored in equity. It has also been held that while it is the general rule that, where the title to the land and the mortgage becomes vested in the same person, the mortgage is merged in the title, and becomes extinguished, yet the mortgage may be kept alive for the protection of the purchaser of the title, and there will be no merger contrary to the intention of the parties. 15 Am. & Eng. Enc. of Law, 319 et seq.; Hapgood Shoe Co. v. First Nat. Bk, 23 Tex. Civ. App. 506, 56 S. W. 995.

It seems that the identical question has been decided in the case of Pike v. Gleason et al., reported in 60 Iowa, 150, 14 N. W. 210. In that case it is held that when land subject to a mortgage is conveyed to a mortgagee, and such conveyance is not intended by either party to be in satisfaction of such mortgage, the law will regard the mortgage as a subsisting lien, which in the hands of the mortgagee or his assigns may be enforced against the land, that when the interests of the mortgagor in such a mortgage have been transferred as collateral security to a bank, whatever remained, after satisfying the claim of the bank, could be assigned to another party, and it would be proper for the court to direct that such balance be paid to him, but that it is not necessary for the court to find an amount due such party and render judgment therefor.

The evidence is conclusive that the intention of Montgomery as expressed to the bank was that the lien should be kept alive. The fact that it appears in the deed that Montgomery assumed the payment of notes and the further fact that the evidence of the indebtedness was not canceled or surrendered, or the lien released, but on the contrary, the bank obtained them, and the further fact that Montgomery assigned the mortgage to

the bank as collateral security for the debt, and represented that it was a good and valid security, is conclusive along this line. Mathews et al. v. Jones, 47 Neb. 616, 66 N. W. 622; Smith v. Loan Co.. 21 Tex. Civ. App. 170, 51 S. W. 515; Am. & Eng. Enc. of Law (2d Ed.) vol. 20, p. 1064, par. "g"; Jones on Mortgages, §§ 872, 848, and 853; Aiken v. Milwaukee Ry. Co., 37 Wis. 469; Pomeroy on Equity, vol. 2, §§ 786, 791; 16 Cyc. 665b; Ætna Life Ins. Co. v. Corn et al., 89 Ill. 173; Brown v. Lapham, 57 Mass. (3 Cush.) 551; Strong v. Converse, 90 Mass. (8 Allen) 557, 85 Am. Dec. 732; 27 Cyc. p. 1329, par. 2, page 1377, par. 2, and page 1380.

[2] It follows, there being no merger in the instant case, that if the appellants had actual notice, or were charged with notice, of the existence of the said notes, they could not recover. It has been held in cases too numerous to mention that if a fact is recited in a deed through which a party claims title to land, he is held to have notice of that fact. It has also been held that if the facts recited are sufficient to put a man upon inquiry, he is charged with notice of those facts which might have been obtained by prosecution of inquiry with reasonable diligence. This is for the reason that the purchaser is entitled to see all the muniments of his title, and therefore is presumed to have seen them.

The converse of this proposition follows, that if the recitals therein are not sufficient to put a prudent man upon this inquiry, then they of themselves do not constitute constructive notice, and notice by recitals extend only to facts recited or reasonably pointed to. It has been also held that not only is a party charged with constructive notice of everything material in the deeds through which his title is adduced, but if any of these conveyances should contain a recital or refer to another deed or instrument likewise collateral and not a part of the direct series, he would, by means of such recital or reference, have notice of this collateral instrument, or its contents, and all the facts indicated, by which it might be ascertained, through inquiry prosecuted with reasonable diligence, and such notice extends to all deeds and other instruments falling properly within the preceding rules, whether recorded or unrecorded. Wells v. Houston, 23 Tex. Civ. App. 629, 57 S.. W. 584.

The court found that there was a sufficient recital in the deeds through which appellants claim to put them upon notice of the fact that these notes were outstanding. We have examined the record carefully, and we are of opinion that there was ample testimony to not only sustain this finding of the court, but sustain the other and remaining findings of the court.

We have given careful attention to the assignments in appellants' brief, but cannot agree with the contentions therein. We find no error in the action of the trial court. Therefore the assignments are all overruled, and this cause is in all things affirmed. It is so ordered.